681 S.E.2d 559 (2009)
In the Matter of K.C. and C.C.
No. COA09-445.
Court of Appeals of North Carolina.
September 1, 2009.
*560 Courtney S. Hull, Moyock, for appellee Currituck County Department of Social Services.
Pamela Newell Williams, Raleigh, for appellee guardian ad litem.
Robin E. Strickland, Raleigh, for appellant respondent-mother.
ERVIN, Judge.
Respondent-Mother, Judith C., appeals from adjudication and disposition orders entered by the trial court finding her children, K.C. (Keith) and C.C. (Carol)[1], to be neglected juveniles on the grounds that the trial court erred in failing to include a visitation plan in its order as required by N.C. Gen. Stat. § 7B-905(c). After careful review, we affirm the trial court's adjudication and disposition orders.
We must first address the motion to dismiss Respondent-Mother's appeal filed by the Currituck County Department of Social Services ("DSS") and a related petition for writ of certiorari filed by Respondent-Mother. On 15 December 2008, Respondent-Mother filed a timely notice of appeal from *561 the trial court's adjudication order, which was entered on 13 November 2008. The 15 December 2008 notice of appeal referenced the adjudication order, but not the disposition order, which had been entered on 20 November 2008. Respondent-Mother subsequently filed an amended notice of appeal on 30 January 2009 seeking relief from both the adjudication and disposition orders. In seeking dismissal of Respondent-Mother's appeal, DSS argued that the amended notice of appeal was not filed within 30 days of the entry of the disposition order; that appeals from an adjudication order have to be taken in conjunction with an appeal from the related disposition order; and the amended notice of appeal, which was the only notice of appeal that referenced the disposition order, was not filed in a timely manner.
After careful review of the record and the applicable law, we agree that Respondent-Mother failed to note a timely appeal from the disposition order and that she was required to file a timely notice of appeal from the disposition order as a prerequisite for appealing issues arising from the adjudication order as a matter of right, N.C. Gen. Stat. § 7B-1001(a)(3) (limiting appeals in juvenile matters conducted "under this Subchapter" to a specified array of orders, including "[a]ny initial order of disposition and the adjudication order upon which it is based"). For that reason, we are constrained to grant DSS's motion to dismiss Respondent-Mother's appeal.
Respondent-Mother has, however, filed a petition seeking the issuance of writ of certiorari pursuant to N.C.R.App. P. 21 in order to permit review of the trial court's orders in the discretion of the court in the event that we conclude that her appeal as of right should be dismissed. According to Respondent-Mother, her failure to note a timely appeal from the trial court's disposition order did not occur as the result of any fault of her own and that, once her trial counsel learned of his mistake, he immediately filed an amended notice of appeal in an attempt to rectify his error. In light of these facts and the importance of issues involving the relations between parents and their children, we elect to exercise our discretion and will allow respondent's petition for a writ of certiorari so as to permit us to review both of the trial court's orders. N.C.R.App. P. 21. Thus, we will proceed to examine Respondent-Mother's challenge to the trial court's orders on the merits.
On 28 May 2008, DSS filed petitions alleging that both Keith and Carol were abused, neglected, and dependent juveniles. On the same day, DSS was granted non-secure custody of both Keith and Carol. According to the allegations set out in the petitions, DSS had been involved with the family in question since the late 1990s. Respondent-Mother and her ex-husband had adopted several children, about whom DSS began to receive reports relating to inappropriate supervision. The first two reports were unsubstantiated. The third report involved the drowning of two small grandchildren in the family pool, a tragedy which occurred while the children were left unsupervised. After this incident Respondent-Mother and her husband separated.
By the filing of the DSS petitions, Keith and Carol, both of whom were teenagers, were the only children still living in Respondent-Mother's home. DSS stated that it was aware of reports that Respondent-Mother kept the refrigerator and food pantry padlocked so Keith and Carol could not obtain access to the food. DSS further alleged that Respondent-Mother was not cooperative with the childrens' school regarding free lunch and that the children were not provided with lunch money, a fact that forced them to borrow food from friends.
Immediately prior to the filing of the DSS petition, Respondent-Mother filed a juvenile complaint against Keith and Carol in which she alleged that they were undisciplined. After DSS was requested to investigate the allegations set out in Respondent-Mother's petition and Respondent-Mother was ordered to cooperate with DSS, a social worker went to the house. At that time, Respondent-Mother became hostile, stated that she disagreed with the requirement that she cooperate with DSS, and demanded that Keith and Carol be removed from the home immediately. As a result of Respondent-Mother's behavior, verbal abuse, and the neglect of the *562 children, DSS took the children into custody, placed them with an older sister, and filed juvenile petitions alleging that Keith and Carol were "exposed to an injurious environment, verbal abuse, lack of basic needs, and are dependent as the mother wants them out."
At a child planning conference held on 4 June 2008, a Memorandum of Agreement and Consent Order was agreed to by all parties except Respondent-Mother. The agreement addressed the placement of the juveniles, visitation, and other issues regarding the matters at issue in this proceeding. Respondent-Mother did not agree that Keith and Carol should be placed with their older sister and stated that, if the children would stop disrupting her home and threatening her, she would eventually allow them to return. By means of an order of the same date, the trial court concluded that it would not be in the juveniles' best interest to return home and that the juveniles should be placed in "the discretion" of DSS.
On 18 September 2008, this case came on for adjudication before the trial court. According to uncontested findings of fact made by the trial court in its 10 November 2008 adjudication order, Respondent-Mother does not generally allow Keith and Carol to be in the family home unless she is present because "the children do not belong in the home when she is not at home." In the event that Respondent-Mother is not at home, the children can contact their sister. Respondent-Mother did not allow the juveniles to have keys to the family home because they kept losing them.
Both children have been diagnosed with various disorders, including attention deficit hyperactivity disorder and post traumatic stress disorder. In addition, Keith has been diagnosed with depression and Carol has been diagnosed with bi-polar disorder. Respondent-Mother did not seek counseling for the children after August 2006 and did not assist the children with taking their medications. In fact, Respondent-Mother threw the juveniles' medicine away out of fear that her grandchildren would find those substances when visiting her home.
Respondent-Mother stated she locks up all of the food "because the children destroy and contaminate the food." There was damage to the walls in Respondent-Mother's home, some of which was caused by the children. Respondent-Mother filed a juvenile complaint against Keith and Carol in April 2008; however, this petition was dismissed following an investigation. Respondent-Mother did not want the children to live with her, claiming that she is afraid for her safety, and stating that she would not provide care or supervision for them.
A social worker sent to interview Respondent-Mother reported that Respondent-Mother "repeatedly screamed ... that the children were a danger to her and themselves and belonged in a group home." According to the social worker, she "removed the children" because "she observed [Respondent-Mother] hysterically screaming and exhibiting an inability to regulate her tone and actions, voice hostility and raving as to the children," which the social worker "perceived to be an immediate safety risk to the children." According to the social worker, Respondent-Mother "has flatly refused to work with the Department towards reunification even though [DSS] has offered things such as visitation, mental health treatment, parenting curriculums, case management/case planning, transportation for [Respondent-Mother] and the children, referrals for therapy and mentor services, assignment services, eyeglass voucher ..., free lunch services ..., home visits with the placement provider, and permanency planning meetings." Based on these and other findings of fact, the trial court adjudicated both Keith and Carol to be neglected and dependent juveniles and ordered that they remain in DSS custody.
The disposition hearing was held on 26 September 2008. At that time DSS requested that the permanent plan be guardianship with a relative. At the disposition hearing, Respondent-Mother objected to the placement of the children with their sister. Respondent-Mother further stated that she would not work with DSS, that she would not participate in visitation because she did not want to be guarded, and that she did not *563 want the children back with her until they got under control.
The trial court found in its 20 November 2008 disposition order that Respondent-Mother refused to work toward reunification and was not receptive to parenting training, choosing instead to blame the children for their behaviors and refusing to accept any responsibility for the damaged relationship between the children and herself. In addition, both Keith and Carol stated that they wanted to remain in their current placement. As a result, the trial court concluded that the best interests of the children would be served by leaving them in the custody of DSS, with placement continuing to be with the children's sister, and relieving DSS of the necessity for attempting to reunify Keith and Carol with Respondent-Mother.
The sole issue raised by Respondent-Mother on appeal is that the trial court erred by failing to adopt an appropriate visitation plan in its disposition order as is required by N.C. Gen.Stat. § 7B-905(c). Although we agree that the trial court did not include a valid visitation plan in its orders, we conclude that any error committed by the trial court in this respect was invited by Respondent-Mother and that, for that reason, Respondent-Mother is not entitled to relief on appeal stemming from the trial court's failure to adopt a visitation plan.
According to N.C. Gen.Stat. § 7B-905(c):
Any dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker, or under which the juvenile's placement is continued outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety. If the juvenile is placed in the custody or placement responsibility of a county department of social services, the court may order the director to arrange, facilitate, and supervise a visitation plan expressly approved by the court. If the director subsequently makes a good faith determination that the visitation plan may not be in the best interests of the juvenile or consistent with the juvenile's health and safety, the director may temporarily suspend all or part of the visitation plan. The director shall not be subjected to any motion to show cause for this suspension, but shall expeditiously file a motion for review.
This Court has previously held that, "[i]n the absence of findings that the parent has forfeited [his or her] right to visitation or that it is in the child's best interest to deny visitation[,] `the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised.'" In re E.C., 174 N.C.App. 517, 522-23, 621 S.E.2d 647, 652 (2005) (quoting In re Custody of Stancil, 10 N.C.App. 545, 552, 179 S.E.2d 844, 849 (1971)). As a result, even if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.
The trial court did not directly address the issue of visitation at the disposition hearing or make any provision for visitation between Respondent-Mother and the juveniles in the disposition order.[2] Furthermore, the disposition order does not reflect that the trial court found that Respondent-Mother had forfeited her right to visitation with the children or that visitation between Respondent-Mother and the juveniles would be harmful to Keith and Carol. However, the trial court did allude to the issue of visitation in numerous findings made in the disposition order, none of which have been challenged by Respondent-Mother on appeal. For example, the trial court found that "[s]ince [the] Child Planning Conference on June 4, 2008, [Respondent-Mother] has made no efforts to follow through with agreed upon recommendations." Respondent-Mother called DSS to cancel visitation with Keith and Carol on 9 *564 June 2008 since "it would be pointless because they do not want to be a part of her family and that she is afraid for her own safety and safety to her property." According to the trial court, "[Respondent-Mother] expressed no plans to see the children" at that time. The trial court also found that Respondent-Mother "stated that she does not wish to see them[3]," that "she is not going to be a supportive parent," and that she "is not interested in working with the children right now." According to the trial court, Respondent-Mother "has not visited with the children since they were removed" "because she will not feel guarded." The trial court found that Respondent-Mother expressed no willingness "to cooperate with [DSS] to get her children back" since "she cannot work with [DSS] until her children are under control and they are not under control." The trial court found that Respondent-Mother "has flatly refused to work with [DSS] towards reunification even though [DSS] has offered things such as visitation,...." As a result, it is clear from the trial court's unchallenged findings of fact that Respondent-Mother had declined to engage in visitation with Keith and Carol, had expressly stated that she did not want to see Keith and Carol, and was generally unwilling to do anything to promote reunification between herself and the juveniles since she claimed that the existing problems were the children's fault and because DSS needed to address and resolve the children's problems before there was any need for Respondent-Mother to take any action to restore her relationship with them.
According to well-established North Carolina law, a litigant will not be heard to complain on appeal about a decision that a trial judge made at that litigant's request. State v. Payne, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) ("Ordinarily, one who causes (or we think joins in causing) the court to commit error is not in a position to repudiate his action and assign it as ground for a new trial.... Invited error is not ground for a new trial."); Overton v. Overton, 260 N.C. 139, 144-45, 132 S.E.2d 349, 353 (1963) ("However, in this case respondents may not assert the objection that the court wrongfully placed the burden of proof of the issue upon them" since "[t]hey requested in their prayer for instructions that the burden of proof be so placed, and the court complied."). In this case, Respondent-Mother could have hardly made her lack of interest in visiting with Keith and Carol clearer. As the trial court's unchallenged findings indicate, Respondent-Mother disclaimed any interest in seeing the children until DSS "fixed" them. Having specifically invited the trial court to honor her wishes by not providing for visitation between herself and the children, Respondent-Mother is in no position to complain when the trial court did what Respondent-Mother effectively asked the trial court to do. As a result, given that Respondent-Mother invited the outcome reached in the only portion of the trial court's order which she has challenged in her brief, Respondent-Mother is not entitled to any relief on appeal. Thus, the trial court's adjudication and disposition orders should be, and hereby are, affirmed.
AFFIRMED.
Judges STEPHENS and STROUD concur.
NOTES
[1] Keith and Carol are both pseudonyms used in this opinion for the purpose of protecting the privacy of the juveniles and for ease of reading.
[2] The disposition order does contain an ordering clause providing that the children's father "shall establish a visitation plan to see the children-in coordination with [the sister's] schedule (for respite, to provide increased supervision, to maintain family relationships)."
[3] The trial court also noted that "[t]he children stated that they do not want to have contact with her either."