**IN RE T.R.T.**

[225 N.C. App. 567 (2013)]

IN THE MATTER OF T.R.T.

No. COA12-905

Filed 19 February 2013

**1. Child Abuse, Dependency, and Neglect—neglect—facts supported by evidence—conclusion support by facts**

The trial court did not err in a child neglect case by concluding that the minor child was neglected. The findings of fact were supported by competent evidence, and the findings supported the conclusion of law that the child was neglected.

**2. Child Abuse, Dependency, and Neglect—visitation—via Skype—not sufficient**

The trial court erred in a child neglect case by ordering that respondent mother's sole visitation with the minor child take place via Skype. The trial court did not find that respondent-mother forfeited her right to visitation or that visitation was not in the minor child's best interest and communication via Skype is not visitation as contemplated by N.C.G.S. § 7B-905(c).

Appeal by respondent-mother from order entered 25 April 2012 by Judge J.H. Corpening, II, in New Hanover County District Court. Heard in the Court of Appeals 29 January 2013.

*Regina Floyd-Davis for New Hanover County Department of Social Services petitioner-appellee.*

*Mark L. Hayes for respondent-mother appellant.*

*Associate Counsel Deana K. Fleming for guardian ad litem.*

McCULLOUGH, Judge.

Respondent-mother appeals from an order concluding that her son, T.R.T., was neglected and that it was in T.R.T.'s best interest to remain in the custody of the New Hanover County Department of Social Services ("DSS"). We affirm in part and reverse and remand in part.

On 6 February 2012, DSS filed a juvenile petition alleging that T.R.T. was neglected in that he lived in an environment injurious to his welfare and did not receive proper care, supervision, or discipline from his mother. DSS had previously been involved with the family

due to respondent-mother's mental health issues; T.R.T. had previously been adjudicated neglected; and T.R.T. had been in DSS custody from July 2010 until 27 October 2011, when he was returned to respondent-mother. The petition alleged that on 9 November 2011, DSS received a report of inappropriate supervision. According to the petition, five-year-old T.R.T. had left respondent-mother's apartment and sought food and assistance from residents in the apartment complex. The petition alleged that respondent-mother was "decompensating," had terminated counseling, and was not adhering to her medication regimen. T.R.T. was taken into nonsecure custody on the following day.

Following a hearing on 29 March 2012, the trial court entered an order on 25 April 2012 concluding that T.R.T. was a neglected juvenile within the definition of N.C. Gen. Stat. § 7B-101(15) (2011). In the dispositional portion of the order, the trial court maintained custody with DSS. Respondent-mother timely appealed from the order.

I.

**[1]** Respondent-mother first challenges the trial court's adjudication of neglect. The trial court made the following findings of fact to support its conclusion that T.R.T. was neglected:

> 1. ... [T.R.T.] was previously in the legal custody of [DSS] from July 20, 2010 through October 10, 2011. On November 9, 2011 [DSS] received a child protective services report alleging inappropriate supervision and care of [T.R.T.].
>
> 2. [T.R.T.] was allegedly seeking food and assistance from a neighbor because he was unable to wake his mother. The distance between [T.R.T.'s] home and the neighbor's home was estimated to be two city blocks. On January 5, 2012, the Case Decision determined the family in need of services and on January 5, 2012, the case was transferred to on-going services.
>
> 3. That between January 5, 2012 and the filing of the Juvenile Petition, [respondent-mother] refused to cooperate with [DSS]'s attempts at weekly home visits, attendance in parenting classes, development of an In-Home Family Services Plan, participation in a Child and Family Team meeting, and consistent mental health

treatment. She informed [DSS] via email of her refusal to cooperate, and demanded that [DSS] close her case.

4. That Social Worker, Pam Nelson has known [respondent-mother] for the past five years and has knowledge of [respondent-mother]'s symptoms of regression. Ms. Nelson noticed a decline in [respondent-mother]'s personal appearance, hygiene and living environment. Ms. Nelson determined that services needed to be implemented to ensure [respondent-mother]'s mental health issues were being properly addressed.

5. That [respondent-mother]'s mental health therapist, Andrea Murrow, expressed concerns that [respondent-mother]'s mental health had deteriorated significantly and expressed concern for her welfare as well as the safety of her son. [DSS] believed [respondent-mother] to be noncompliant with her psychotropic medication regimen; however, [DSS] was unable to verify compliance with her medication and mental health treatment due to her refusal to sign releases for information.

6. That [respondent-mother]'s refusal to cooperate with [DSS], which directly impacted said agency's ability to determine her mental status and compliance with prescribed psychotropic medications and lack of appropriate supervision, placed the juvenile at risk of substantial harm.

"Allegations of neglect must be proven by clear and convincing evidence. In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citation omitted). If competent evidence supports the findings, they are "binding on appeal." *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003).

Respondent-mother argues that the findings of fact do not support the trial court's conclusion of neglect because (1) the trial court did not and could not base its adjudication on T.R.T.'s alleged excursion from the home; and (2) the trial court improperly concluded that uncertainty regarding respondent-mother's mental health rendered T.R.T. neglected.

IN RE T.R.T.

[225 N.C. App. 567 (2013)]

As to her first argument, respondent-mother contends that finding of fact number 2 is based solely on allegations that T.R.T. left respondent-mother's home unsupervised, and even if the trial court had made a finding that T.R.T. left his mother's home unsupervised, the evidence is not competent to support such a finding. Respondent-mother is correct in her assertion that finding of fact number 2 contains only an allegation that T.R.T. left his home unsupervised. However, her challenge to this finding is immaterial to the trial court's adjudication of neglect. It appears that the trial court's ultimate determination was not based on a finding that T.R.T. actually left the home unsupervised. Findings of fact numbers 1 and 2 provide historical context for the case and illustrate why DSS began a second investigation.

Moreover, even if the trial court had made a finding that T.R.T. left the apartment unsupervised, such a finding would have been supported by the evidence. At the hearing, Social Worker Pamela Nelson testified that at one of her home visits, T.R.T. acknowledged that he left the apartment on his own and admitted that he would probably do it again. Respondent-mother argues that this testimony is impermissible hearsay; however, she did not object to this testimony at the hearing and therefore cannot raise this issue on appeal. *See State v. Robertson*, 149 N.C. App. 563, 569, 562 S.E.2d 551, 556 (2002) (a party must object to testimony on the challenged basis to properly preserve the issue for appeal). Therefore, we reject respondent-mother's challenge to finding of fact number 2.

As to her second argument, respondent-mother challenges findings of fact numbers 4 and 5, both of which pertain to her mental health. Respondent-mother contends that finding of fact number 4 is based on speculation. We disagree. First, we note that none of the language in finding 4 uses speculative terms. Rather, this finding is based solely on Ms. Nelson's direct observations of respondent-mother and her familiarity with respondent-mother's history of mental health issues. Furthermore, this finding of fact is supported by competent evidence in the record. At the hearing, Ms. Nelson testified that she had known respondent-mother for five years; that she visited respondent-mother after the report of inappropriate supervision; and that respondent-mother's physical appearance and the condition of her apartment had deteriorated. Ms. Nelson testified that based on her observations, respondent-mother was in need of services. We find the foregoing testimony sufficient to support finding of fact number 4, and we accordingly reject respondent-mother's argument.

Respondent-mother also objects to the first sentence in finding of fact number 5. She argues that it is based on incompetent hearsay evidence. We agree with respondent-mother's argument. It appears that this finding was based on testimony from social worker Allison Nance regarding observations by respondent-mother's therapist, Andrea Murrow. Counsel for respondent-mother objected to Ms. Nance's testimony, and the trial court sustained the objection. Therefore, the trial court should have disregarded the objectionable testimony. This Court has acknowledged the "well-established supposition that the trial court in a bench trial 'is presumed to have disregarded any incompetent evidence.'" *In re J.B.*, 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) (quoting *In re Huff*, 140 N.C. App. 288, 298, 536 S.E.2d 838, 845 (2000)). Here, however, the trial court cannot be presumed to have disregarded the incompetent evidence because the trial court made findings based on the objectionable testimony. Nonetheless, even without this finding of fact, we conclude that the trial court's findings of fact support an adjudication of neglect. *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) ("[W]e agree that some of [the challenged findings] are not supported by evidence in the record. When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error.").

Lastly, respondent-mother invokes this Court's longstanding requirement "that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision, or discipline.'" *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (quoting *In re Thompson*, 64 N.C. App. 95, 101, 306 S.E.2d 792, 796 (1983)). Respondent-mother argues that the evidence is insufficient to sustain the conclusion that T.R.T. suffered from an impairment.

While it is true that T.R.T. did not suffer from an actual impairment, the trial court ultimately found that respondent-mother's refusal to cooperate with DSS placed him at risk of substantial harm. We find that this ultimate finding complies with the requirement stated above, that it is supported by the evidence, and that it supports the trial court's adjudication of neglect.

T.R.T. had been in respondent-mother's custody for only a month when DSS received the report of inappropriate supervision. During the investigation, Ms. Nelson observed that respondent-mother's personal appearance, hygiene, and the condition of her home had deteri-

orated. At a home visit, respondent-mother and Ms. Nelson discussed safety measures which respondent-mother could take in order to properly supervise T.R.T.; and respondent-mother admitted that she had difficulty disciplining and controlling T.R.T. After Ms. Nelson determined that respondent-mother was in need of services, respondent-mother refused to cooperate with DSS. She refused to take parenting classes, refused free daycare for T.R.T., admitted that she was no longer attending mental health therapy, and refused to allow DSS access to her records to determine whether she was compliant with her mental health medication. Moreover, respondent-mother testified at the hearing, where she admitted that the social workers' testimony was accurate. She also admitted to refusing services from DSS.

This evidence, in light of T.R.T.'s past adjudication of neglect and the social workers' knowledge of respondent-mother's history of mental health issues, was sufficient for the trial court to determine that respondent-mother's refusal to cooperate with DSS placed T.R.T. at risk of substantial harm. *See In re C.M.*, 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007) (affirming a finding of neglect based on parents' previous involvement with DSS and failure to comply with case plan). Accordingly, we affirm the trial court's conclusion that T.R.T. was a neglected juvenile.

II.

[2] Next, respondent-mother challenges the portion of the trial court's disposition order pertaining to visitation. Our juvenile code provides that "[a]ny dispositional order . . . under which the juvenile's placement is continued outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B–905(c) (2011). "The awarding of visitation of a child is an exercise of a judicial function, and a trial court may not delegate this function to the custodian of a child." *In re E.C.*, 174 N.C. App. 517, 522, 621 S.E.2d 647, 652 (2005). This Court has previously stated that:

> In the absence of findings that the parent has forfeited [her] right to visitation or that it is in the child's best interest to deny visitation "the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised."

*Id.* at 522, 621 S.E.2d at 652 (alteration in original) (quoting *In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971)). We have further held:

> As a result, even if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.

*In re K.C. & C.C.*, 199 N.C. App. 557, 562, 681 S.E.2d 559, 563 (2009).

In the instant case, the trial court's order provided the following regarding visitation:

> That the Department is authorized to set up Skype visitation for [respondent-mother] with [T.R.T.]. The Skype visitation is to occur during the supervised visitation class with Ms. Schultz at the Child Advocacy Parenting Place (CAPP). The facilitators are authorized to terminate the Skype visitation, if [respondent-mother] does not comply with any necessary re-direction. Visitation may be expanded in the discretion of the Department and the Guardian ad Litem.

Respondent-mother argues that the trial court erred in ordering the visitation plan because the court failed to make a finding that respondent-mother forfeited her right to visitation or that visitation was not in T.R.T.'s best interest. In so arguing, respondent-mother takes the position that communication via Skype is not visitation as contemplated by N.C. Gen. Stat. § 7B-905(c), and that the trial court's order effectively denies her visitation with T.R.T. We agree.

The trial court did not permit face-to-face visitation, but instead allowed respondent-mother to communicate with T.R.T. via Skype. Skype is a software application that allows video communication between individuals using an internet connection, webcam, and computer or mobile device with a microphone or speakers. *See* What is Skype?, http://beta.skype.com/en/what-is-skype (last visited 31 Jan. 2013). We conclude that, contrary to the assertions of DSS and the guardian ad litem, communication via Skype does not constitute visitation as contemplated by N.C. Gen. Stat. § 7B-905(c). Nothing in our juvenile code states that electronic communication may be substi-

tuted for in-person visitation. To the contrary, our General Statutes state that "[e]lectronic communication with a minor child may be used to *supplement* visitation with the child. Electronic communication may not be used as a replacement or substitution for custody or visitation." N.C. Gen. Stat. § 50-13.2(e) (2011) (emphasis added). "Electronic communication" is defined as "contact, other than face-to-face contact, facilitated by electronic means, such as by telephone, electronic mail, instant messaging, video teleconferencing, wired or wireless technologies by Internet, or other medium of communication." Skype is at essence a form of video conferencing and therefore is included in the definition of "electronic communication" found in Section 50-13.2(e).

Although this section is found in Chapter 50 of our General Statutes, nothing limits subsection (e) to custody actions brought pursuant to Chapter 50. Unlike subsection (a), which applies to "[a]n order for custody of a minor child entered *pursuant to this section*," subsection (e) applies to "[a]n order for custody of a minor child." N.C. Gen. Stat. § 50-13.2(a), (e) (emphasis added). We therefore hold that it is a generic provision which applies to all custody actions. *See Belk v. Belk,* ___ N.C. App. ___, ___, 728 S.E.2d 356, 365 (2012) (concluding that a generic provision in N.C. Gen. Stat. § 6–21(2) allowing for the award of attorneys' fees in an action to fix the rights and duties of a party under a trust agreement applies to an action for the removal of a custodian and resulting accounting brought pursuant to Chapter 33A of our General Statutes); *see also Food Stores v. Board of Alcoholic Control,* 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966) ("Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy[.]" (internal quotation marks and citation omitted)). Based on the foregoing, we conclude that by ordering only Skype visitation, the trial court's order denied respondent-mother visitation with T.R.T as contemplated by N.C. Gen. Stat. § 7B-905(c).

Despite denying visitation, the trial court did not make any specific findings that respondent-mother forfeited her right to visitation or that visitation would be inappropriate under the circumstances. *See K.C.,* 199 N.C. App. at 562, 681 S.E.2d at 563. The order therefore fails to comply with N.C. Gen. Stat. § 7B-905(c). As a result, we remand this case to the trial court for additional findings and conclusions relating to the issue of visitation.

**IN RE T.R.T.**

[225 N.C. App. 567 (2013)]

Furthermore, should a trial court wish to order electronic communication as a supplement to visitation between a parent and juvenile, it must comply with the pertinent statutory authority. To reiterate, such communications are governed by N.C. Gen. Stat. § 50-13.2(e), which provides, in pertinent part, the following:

> An order for custody of a minor child may provide for visitation rights by electronic communication. In granting visitation by electronic communication, the court shall consider the following:
>
> (1)   Whether electronic communication is in the best interest of the minor child.
>
> (2)   Whether equipment to communicate by electronic means is available, accessible, and affordable to the parents of the minor child.
>
> (3)   Any other factor the court deems appropriate in determining whether to grant visitation by electronic communication.
>
> The court may set guidelines for electronic communication, including the hours in which the communication may be made, the allocation of costs between the parents in implementing electronic communication with the child, and the furnishing of access information between parents necessary to facilitate electronic communication.

*Id.*

Although the trial court's findings set up some guidelines for Skype communication and touched on the court's rationale for such communication, the court should make sure it considers items under this section. Consequently, we conclude that the trial court erred in ordering electronic video communication between respondent-mother and T.R.T. We therefore also remand the case for additional findings in accordance with N.C. Gen. Stat. § 50-13.2(e).

Affirmed in part; reversed and remanded in part.

Judges HUNTER (Robert C.) and DAVIS concur.