IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-377

No. COA21-666

Filed 7 June 2022

Cumberland County, No. 20 JA 344

IN THE MATTER OF: J.C., minor juvenile.

Appeal by Respondents from order entered 7 April 2021 by Judge Caitlyn Evans in Cumberland County District Court and from order entered 27 July 2021 by Judge Cheri Siler Mack in Cumberland County District Court. Heard in the Court of Appeals 27 April 2022.

> *Patrick A. Kuchyt for Petitioner-Appellee Cumberland County Department of Social Services.*
>
> *Richard Croutharmel for Respondent-Appellant Mother.*
>
> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for Respondent-Appellant Father.*
>
> *K&L Gates LLP, by Leah D'Aurora Richardson, for guardian ad litem.*

GRIFFIN, Judge.

Respondents appeal from orders adjudicating their minor child, Janet[1], a

---

[1] We use a pseudonym to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b).

neglected juvenile and continuing custody of Janet with Cumberland County Department of Social Services. Respondents argue that the trial court's disposition order must be vacated because the order's visitation provisions did not provide the minimum duration of visits and allowed only virtual visits without making required findings. Respondent Father argues that the trial court erred by (1) adjudicating Janet a neglected juvenile; (2) making prejudicial statements from the bench; (3) ordering Father to complete irrelevant case plan requirements; and (4) failing to inform Father of his right to file a motion for review of the visitation plan.

¶ 2     We hold that the trial court erred by failing to inform Father of his right to file a motion for review of the visitation order. We therefore remand this matter to the trial court with instructions to inform Father of his right to file a motion for review. We otherwise affirm the trial court's orders.

## I.     Factual and Procedural Background

¶ 3     In October 2020, CCDSS filed a juvenile petition alleging that Janet was a neglected juvenile after Respondents had "engaged in a physical altercation with each other." "Father stated to law enforcement that Respondent Mother was upset because he had been drinking and [that they had] pushed each other." After observing "scratches" on Father, law enforcement placed Mother under arrest and "charged [her] with simple assault." Janet "was in Respondents' care at the time of the altercation but was not present."

¶ 4        "At the time of the filing of the petition [by CCDSS]," Mother had "three older children who [were] in the custody of CCDSS. . . . Father is the father of two of the older children." The older children were each "adjudicated neglected based on Respondents' lack of proper care . . . in that . . . Mother engaged in a physical altercation with the oldest juvenile, Respondents would not allow the CCDSS social worker to have access to the children, and Respondents failed to provide necessary remedial and medical care for one of the children."

¶ 5        On 10 March 2021, a hearing was held on the petition filed by CCDSS, after which the trial court entered an order adjudicating Janet a neglected juvenile and temporarily placing her in the custody of CCDSS. The order provided for in-person visitation between Respondents and Janet. Following a disposition hearing, a disposition order was entered continuing custody of Janet with CCDSS and providing that Janet "be placed with [her] paternal grandparents [in California.]" The order provided that "supervised virtual visitation with the juvenile . . . is in the juvenile's best interest" and established a virtual visitation plan.

¶ 6        Respondents timely filed notice of appeal from the trial court's adjudication and disposition orders.

## II.    Analysis

¶ 7        Respondents argue that the trial court's disposition order must be vacated because the order's visitation provisions did not provide the minimum duration of

visits and limited visits to virtual visits only without making required findings. Father argues that the trial court erred by (1) adjudicating Janet a neglected juvenile; (2) making prejudicial statements from the bench; (3) ordering Father to complete irrelevant case plan requirements; and (4) failing to inform Father of his right to file a motion for review of the visitation plan.

## A. Visitation Order

¶ 8        Respondents argue that the trial court erred by (1) failing to provide the minimum duration of visits in the disposition order and (2) limiting all visits to virtual visits only without making required findings.  We disagree.

¶ 9        "We review disposition orders, including visitation determinations, for abuse of discretion.  When reviewing for abuse of discretion, we defer to the trial court's judgment and overturn it only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Matter of K.W.*, 272 N.C. App. 487, 495, 846 S.E.2d 584, 590 (2020) (citations omitted).

### 1. Minimum Duration of Visits

¶ 10        With respect to the minimum duration of visits, N.C. Gen. Stat. § 7B-905.1(b) provides:

> If the juvenile is placed or continued in the custody or placement responsibility of a county department of social services, the court may order the director to arrange, facilitate, and supervise a visitation plan expressly approved or ordered by the court.  The plan shall indicate

the minimum frequency and length of visits and whether the visits shall be supervised.

N.C. Gen. Stat. § 7B-905.1(b) (2021).

The trial court's disposition order contained the following visitation provisions:

10. Respondent Parents are hereby authorized virtual visits with the juvenile at 12 p.m. on Thursdays, with 24-hour notice. If no notice is given, there shall be no visits.

11. When the juvenile is placed in California [with her grandparents], Respondent Parents are authorized virtual/telephone visits up to (30) thirty minutes, two times per week.

. . .

14. The Court's previous orders not inconsistent with this order shall remain in effect.

Respondents argue that, by not stating the specific duration of visits in paragraph No. 10 above, the trial court committed reversible error. However, Respondents overlook that paragraph No. 14 states that "previous orders not inconsistent with this order shall remain in effect." The disposition order further stated that "the [c]ourt incorporates all the previous findings made from the Adjudication Hearing heard on March 10, 2021, as if set forth fully herein." In the order entered pursuant to that hearing, the trial court ordered that "Respondent Parents *shall receive one (1) hour supervised visitation* with the juvenile once a week, supervised by [CCDSS]." (Emphasis added).

¶ 13        "Viewing the[] two orders in conjunction, it is clear that the visitation plan authorizes supervised[]" virtual visits, once per week, for one hour.  *In re L.Z.A.*, 249 N.C. App. 628, 639, 792 S.E.2d 160, 169 (2016) (affirming a visitation plan in a disposition order where the order referred to a previous visitation plan which specified the minimum duration of visitation); *In re J.W.*, 241 N.C. App. 44, 51, 772 S.E.2d 249, 255 (2015) (affirming a visitation plan in a disposition order where the order provided that all previous orders remained in full effect, and where a prior order specified the minimum duration of visitation).  As in *L.Z.A.* and *J.W.*, we conclude that the two orders, read together, satisfied N.C. Gen. Stat. § 7B-905.1(b).

### 2. *Virtual Visitation*

¶ 14        With respect to visitation, "[a]n order that removes custody of a juvenile from a parent . . . or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety."  N.C. Gen. Stat. § 7B-905.1(a) (2021).  "Conversely, the court may prohibit visitation or contact by a parent when it is in the juvenile's best interest[.]"  *Matter of J.L.*, 264 N.C. App. 408, 421, 826 S.E.2d 258, 268 (2019) (citing N.C. Gen. Stat. § 7B-905.1(a) (2017)).

> [I]n the absence of findings that the parent has forfeited
> [his or her] right to visitation or that it is in the child's best
> interest to deny visitation[,] the court should safeguard the
> parent's visitation rights by a provision in the order
> defining and establishing the time, place[,] and conditions

under which such visitation rights may be exercised. As a result, even if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.

*Id.* at 421−22, 826 S.E.2d at 268.

¶ 15 Regarding virtual visitation, N.C. Gen. Stat. § 50-13.2(e)(3) provides that "[e]lectronic communication may not be used as a replacement or substitution for custody or visitation." N.C. Gen. Stat. § 50.13.2(e)(3). Instead, electronic communication may only "be used to supplement visitation with the child." *Id.*; *see also In re T.R.T.*, 225 N.C. App. 567, 573−74, 737 S.E.2d 823, 828 (2013) ("Nothing in our juvenile code states that electronic communication may be substituted for in-person visitation.").

¶ 16 Here, the trial court made the following findings with respect to visitation in its disposition order:

> 37. The Respondent Parents have been authorized one (1) hour supervised visitation with the juvenile at [CCDSS] or in the community, once a week, supervised by the [CCDSS]. . . . If the Respondent Parents miss two (2) visits, the visits are to be moved back to bi-weekly. If the Respondents miss visits again, the Department was ordered to cease all visits.
>
> 38. Respondent Mother has not been consistently attending the visits. In fact, on February 24, 2021, Respondent

Parents ended the visitation within twenty minutes because the juvenile was crying. Respondent Father set up virtual visits with the juvenile, but Respondent Mother has not been present. There have been no recent video visitations between the juvenile and Respondent Father.

39. On or about March 10, 2021, at the Adjudication and Temporary Disposition hearing, [CCDSS] made the following findings: *"That the Respondent Mother has only visited with the juvenile once. Respondent Mother continues to testify that it is too hard for her to visit with the juvenile inasmuch as the juvenile is sad and cries during the visitation. Respondent Mother stated the visitations are more for [CCDSS] than it is for her daughter and [she] was not going to put her daughter through that experience. At the last hearing Respondent Mother informed the Court that she desires to resume visitation.* That as of this hearing, Respondent Mother has not visited with the juvenile . . . .

40. Respondent Father continues to be the only Respondent Parent visiting with the juvenile.

¶ 17      Based on the foregoing findings, the trial court made the following conclusions of law and orders with respect to visitation:

4. That Respondent Parents are not fit and proper persons for the care, custody, and control of the juvenile. That Respondent Mother is a fit and proper person to have supervised virtual visitation with the juvenile and such visitation is in the juvenile's best interest. That Respondent Father is a fit and proper person to have supervised virtual visitation with the juvenile and such visitation is in the juvenile's best interest.

5. That the juvenile . . . should be placed with the paternal grandparents [in California]. That placement of the juvenile . . . with her paternal grandparents is in the

juvenile's best interest.

. . .

> 10. Respondent Parents are hereby authorized virtual visits with the juvenile at 12 p.m. on Thursdays, with 24-hour notice.  If no notice is given, there shall be no visits.

> 11. When the juvenile is placed in California, Respondent Parents are authorized virtual/telephone visits up to thirty (30) minutes, two times per week.

¶ 18  Based on the foregoing findings and conclusions, it is clear that the trial court determined that virtual visitation would be in Janet's best interests and that in-person visitation "would be inappropriate in light of the specific facts under consideration." *Matter of J.L.*, 264 N.C. App. at 421−22, 826 S.E.2d at 268.  The trial court's findings indicate that Mother failed to exercise her visitation rights on multiple occasions, and under the original visitation plan, visits were to be terminated if Father or Mother missed more than two visitation appointments.  The findings also indicate that Father had already "set up virtual visits with the juvenile" but that "[t]here have been no recent video visitations between the juvenile and Respondent Father."  Additionally, in-person visitation would doubtlessly have been impracticable once Janet moved to California with her paternal grandparents.  By establishing a video visitation plan, the trial court provided for visitation that Respondents would reasonably be able to comply with under the circumstances.

¶ 19  Lastly, by providing that "supervised virtual visitation with the juvenile" was

"in the juvenile's best interest[,]" the trial court necessarily concluded that in-person visitation would *not* be in Janet's best interest. Although the trial court did not expressly find that in-person visitation would not be in Janet's best interest, "express findings on the children's best interests are not necessary when[,]" as here, "it is clear from the record that the court considered the children's best interests in making its visitation determination." *Matter of E.R.*, 278 N.C. App. 373, 2021-NCCOA-322 ¶ 38 (July 6, 2021) (unpublished) (citing *Matter of T.W.*, 250 N.C. App. 68, 77−78, 796 S.E.2d 792, 798 (2016)). Indeed, the relevant statute contains no provision stating that the trial court must expressly find that in-person visitation is inappropriate. Rather, the statute provides only that the order "shall provide for visitation that is in the best interests of the juvenile . . . , *including no visitation.* N.C. Gen. Stat. § 7B-905.1(a) (emphasis added). Respondents' argument is therefore without merit.

**B. Neglect**

¶ 20     Father argues that the trial court erred by adjudicating Janet a neglected juvenile because the trial court "did not find a substantial risk of harm, and all of the evidence does not support one." We disagree.

¶ 21     "The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007)

(citations and internal quotation marks omitted). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *Id.*

¶ 22    Father does not challenge any of the trial court's findings of fact in the adjudication order. The findings of fact in the order are therefore binding on appeal. *Id.* "[W]e review a trial court's conclusions of law *de novo*[.]" *In re M.H.*, 272 N.C. App. 283, 286, 845 S.E.2d 908, 911 (2020) (citation omitted).

¶ 23    N.C. Gen. Stat. § 7B-101(15) defines a "[n]eglected juvenile" in pertinent part as:

> Any juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker does any of the following:
>
> a.  Does not provide proper care, supervision, or discipline.
>
> b.  Has abandoned the juvenile.
>
> c.  Has not provided or arranged for the provision of necessary medical or remedial care.
>
> . . .
>
> e.  Creates or allows to be created a living environment that is injurious to the juvenile's welfare.

N.C. Gen. Stat. § 7B-101(15) (2021).

¶ 24    "In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives . . . in a home where another juvenile has been subjected

to abuse or neglect by an adult who regularly lives in the home." *Id.* "The fact of prior abuse, standing alone, however, is not sufficient to support an adjudication of neglect. Instead, this Court has generally required the presence of other factors to suggest that the neglect or abuse will be repeated." *Matter of K.L.*, 272 N.C. App. 30, 51, 845 S.E.2d 182, 197 (2020) (citations and internal quotations marks omitted). These factors "include the presence of domestic violence in the home and current and ongoing substance abuse issues, unwillingness to engage in recommended services or work with or communicate with DSS regarding prior abuse and neglect, and failing to accept responsibility for prior adjudications[.]" *Id.* at 51–52, 845 S.E.2d at 197–98 (citations omitted).

¶ 25      In this case, the trial court's adjudication order contained the following findings of fact:

> 13. [CCDSS] received a Child Protective Services (CPS) referral on 8/28/2020 concerning the safety of [Janet]
>
> . . .
>
> 15. At the time of the filing of the petition, Respondent Mother ha[d] three older children who [were] in the custody of CCDSS. Respondent Father is the father of two of the older children. On 8/2/2019, the children were adjudicated neglected based on Respondent's lack of proper care and supervision in that Respondent Mother engaged in a physical altercation with the oldest juvenile, Respondents would not allow the CCDSS social worker to have access to the children, and Respondents failed to provide necessary remedial and medical care for one of the children. . . .

16. As of the date of the filing of this petition, Respondents [were] still engaged in the plan to alleviate the conditions for which the older children were removed from the care of [Respondents]. . . .

17. On 8/1/2020, [Respondents] engaged in a physical altercation with each other. Respondent Father stated to law enforcement that Respondent Mother was upset because he had been drinking and [that they had] pushed each other. A Fayetteville Police officer observed scratches on Respondent Father. As a result, Respondent Mother was arrested and charged with simple assault. The child was in Respondents' care at the time of the altercation but was not present.

18. A safety assessment was completed on August 30, 2020 with a 45 day plan for the child. The child was not removed at the time. Respondent Mother and Respondent Father allowed [the] CCDSS social worker access to the child on 9/2/2020 and 9/17/2020. Since 9/17/2020, Respondents have not allowed the social worker access to the child as required by the plan.

19. The Respondent Parents were ordered by the Court in the sibling matter . . . to complete Domestic Violence classes and neither parent has completed those classes as of the date of the filing of this Petition. Respondent Mother has started the classes.

20. The Court finds that the evidence presented rises to the level of neglect pursuant to N.C. Gen. Stat. § 7B-101(15). . . . The Court finds neglect based on the very young age of the juvenile and that the Respondent Parents were the sole caretakers of the juvenile. The Respondent Parents failed to complete domestic violence services in the sibling matters, along with other services, and domestic violence continued in the home thusly creating an environment injurious to a very young juvenile.

The trial court's findings of fact support the adjudication of Janet as neglected. At the time the juvenile petition was filed, three of Respondents' older children had been adjudicated neglected and were in the custody of CCDSS, a domestic violence incident between Respondents occurred while Respondents were the sole caretakers of Janet, Respondents refused to allow CCDSS social workers access to Janet as required by the case plan, and neither parent had completed the domestic violence classes they were ordered to complete as part of a prior adjudication of neglect. Each of these factors support the trial court's adjudication of Janet as neglected. *See Matter of K.L.*, 272 N.C. App. at 51–52, 845 S.E.2d at 197–98 (citations omitted) ("[F]actors that suggest that the neglect or abuse will be repeated include the presence of domestic violence in the home . . . , unwillingness to engage in recommended services or work with or communicate with DSS regarding prior abuse and neglect, and failing to accept responsibility for prior adjudications[.]" (citations omitted)).

## C. Prejudicial Statements

Father next argues that the trial court abused its discretion by making prejudicial statements from the bench. We disagree.

Father argues that the following remarks by the trial judge show "a concerning bias against" Respondents and constitute an abuse of discretion:

> I'm going to tell you guys how this is going to have, what's going to happen. I'm going to tell you how this is going to go. I send her out to California. At the first permanency

planning hearing, the next 90 days, right, they're going to have done absolutely nothing, because they're going to throw their hands up – I'm just being real. They're going to throw their hands up and say, You know what, the child is out there, we're not getting her back, she's been in my business, she got on my nerves, I can't stand it anyway, so guess what, I'm not doing a thing. But they're not doing it because, guess what, the child is already gone, so you all are going to keep saying that I'm going to reunify, but you've sent my child to California, and I now don't see her even though I get to see her for a week now, and I'm not doing it. For the week, the hour, guess what, I'm not doing it now at all.

They're not going to do one thing. Then we're going to come back here and I'm going to set a second permanency planning and I'm going to be at the end of, what's that, where are we, May, June, July, August, August, September, October, November, right before the end of the year I'm going to set the second one, and I'm going to say they continue to act inconsistent with their constitutional right, they still have not done one thing, they're not doing one thing, I'm going to close the file, the child's going to be gone. But if you're saying that reunification is an option? This is -- just hear me out. What I'm trying to tell them is, they're either going to get on board right now or I am going to be sending, because I'm going to make all of these findings, after the first permanency plan I'm going to tell them that the permanency plan needs to be guardianship with other suitable persons or custody with other suitable persons, and reunification to be, reunification and custody could be with someone else, because they're not going to do it, because – they're asking now, Give me one more chance, give me one more chance. I have given a million chances on less things, or more things.

So the issue is, I hate that I might lose this, but then again, if that's what's going to happen, I don't want them ping-ponging because, see, I don't want us to do, send, let them

> start working with us because they know she's going to go
> and then they fall off and they're not going to do it.

¶ 29    Father also provides in his brief that "the court appeared confused about the facts of the case[] while ordering disposition[,]" "refused to accept [Father's] employment[,]" "stated because [Father] was working for cash, [Father] was not paying his taxes[,]" and "refused to accept [Mother's] prescriptions that she provided DSS unless she physically provided the [pill] bottle itself."

¶ 30    Although we find some of the trial judge's remarks unnecessary and unadvisable, Father fails to allege any particular legal error resulting from the remarks made by the trial judge and cites no law on point to support his argument. Father's argument is therefore without merit.

**D. Case Plan Requirements**

¶ 31    Father argues that the trial court erroneously "ordered [Father] to complete irrelevant case plan requirements that had no nexus to Janet's removal conditions." Specifically, Father argues that "there is no evidence as to why [he] should have to provide random [drug] screens or meet DSS' approval regarding housing and employment[,]" contending that "[t]he requirements are unsupported and should be struck." We disagree.

¶ 32    Section 7B-904(d1) of our General Statutes provides in pertinent part:

> At the dispositional hearing or subsequent hearing, the
> court may order the parent, guardian, custodian, or

caretaker served with a copy of the summons pursuant to G.S. 7B-407 to do any of the following:

. . .

(3) Take appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent, guardian, custodian, or caretaker.

N.C. Gen. Stat. § 7B-904(d1)(3) (2021).

¶ 33    "For a court to properly exercise the authority permitted by this provision, there must be a nexus between the step ordered by the court and a condition that is found or alleged to have led to or contributed to the adjudication." *In re T.N.G.*, 244 N.C. App. 398, 408, 781 S.E.2d 93, 101 (2015) (citation omitted).  "However, the trial court is not limited to ordering services which directly address the reasons for the children's removal from a parent's custody.  It may also order services which could aid in both understanding and resolving the possible underlying causes of the actions that contributed to the trial court's removal decision." *Matter of S.G.*, 268 N.C. App. 360, 368, 835 S.E.2d 479, 486 (2019) (citation and internal quotation marks omitted).

¶ 34    In this case, there was sufficient evidence for the trial court to require Father to "[c]omplete a substance abuse assessment" and "[p]articipate in random drug screens."  The adjudication order included the following finding of fact, which was incorporated by reference in the disposition order requiring a substance abuse

assessment and drug screenings:

> 17. On 8/1/2020, [Respondents] engaged in a physical altercation with each other. *Respondent Father stated to law enforcement that Respondent Mother was upset because he had been drinking and [that they had] pushed each other.* A Fayetteville Police officer observed scratches on Respondent Father. As a result, Respondent Mother was arrested and charged with simple assault. The child was in Respondents' care at the time of the altercation but was not present.

(Emphasis added). Accordingly, there was sufficient evidence for the trial court to conclude that a substance abuse assessment and drug screenings "could aid in both understanding and resolving the possible underlying causes of" domestic violence in the home. *Id.*

¶ 35        Father argues that the trial court's finding that "substance abuse [is] still an issue with Respondent[s]" is unsupported by the evidence. However, the trial court also found that Father "has submitted to random drug screens, but they are sporadic. . . . Father was a 'No Show' on January 22, 2020; February 17, 2020, and March 3, 2021. . . . The Court considers no shows as positive drug screens." Given Father's inconsistent compliance with drug screenings and the possibility that his drinking could have led to domestic violence in the home, we hold that there was sufficient evidence to require Father to complete a substance abuse assessment and participate in drug screenings.

¶ 36        With respect to Father's employment, a social worker testified at the

disposition hearing that CCDSS had requested proof of income from employment in May of 2021 but "did not receive an email back from him." She further testified that she had "only received one" pay stub from Father in 2020, which was "the last" and "only time that [she] received pay stubs." Although Father testified at the disposition hearing that he was working and was paid in cash, he did not provide any proof of employment other than the one pay stub he provided to CCDSS in 2020. The trial court thus did not err by requiring Father to provide proof of employment.

¶ 37        There was also sufficient evidence to require Father to maintain stable housing. The trial court's findings of fact, to which Respondents stipulated, included findings that domestic violence occurred in the home, that Respondents refused to allow CCDSS social workers access to Janet as required by the case plan, and that neither parent had completed the domestic violence classes they were ordered to complete as part of a prior adjudication of neglect. These factors indicate that Respondents may not be maintaining a safe and stable home environment for Janet. The trial court thus did not err by ordering Father to maintain stable housing.

## E. Motion for Review

¶ 38        Father argues that the trial court erred by "fail[ing] to inform [Father] of his right to file a motion for review" of the visitation plan, contending that "[t]he order must be vacated and remanded." We agree that the trial court erred by failing to inform Father of his right to file a motion for review. We therefore remand this

matter to the trial court to so inform Father of his right, but we do not vacate the order.

¶ 39        Pursuant to N.C. Gen. Stat. § 7B-905.1(d), "[i]f the court waives permanency planning hearings and retains jurisdiction, all parties shall be informed of the right to file a motion for review of any visitation plan entered pursuant to this section." N.C. Gen. Stat. § 7B-905.1(d) (2021).  "This Court has held that a trial court's failure to inform a party of this right in a permanency planning order can constitute reversible error."  *Matter of K.W.*, 272 N.C. App. 487, 497, 846 S.E.2d 584, 591 (2020) (citation omitted).  Unlike a permanency planning order, however, "this appeal arises from an initial disposition order, which the trial court is required to review 'within 90 days from the date of the initial disposition hearing.'"  *Id.* at 498, 846 S.E.2d at 591 (quoting N.C. Gen. Stat. § 7B-905(b) (2019)).  This Court held in *K.W.* that, on appeal "from an initial disposition order," we are only required to remand the matter to the trial court to "enter an order compliant with N.C. Gen. Stat. § [7B-]905.1(d)."  *Id.* at 498, 846 S.E.2d 591–92.  As in *K.W.*, we remand this matter to the trial court to enter an order in accordance with section 7B-905.1(d) but do not vacate the order.

## III.    Conclusion

¶ 40        For the foregoing reasons, we remand this matter to the trial court with instructions to inform Father of his right to file a motion for review of the visitation plan.  We otherwise affirm the trial court's orders.

AFFIRMED IN PART; REMANDED.

Judges DIETZ and JACKSON concur.