McGEE, Chief Judge.
 

 *672
 
 Respondent-Mother ("Mother") appeals from orders adjudicating A.M. and E.R. (together, "the Children") to be abused and neglected and ordering that the Children remain in the custody of the Brunswick
 
 *673
 
 County Department of Social Services ("DSS"). We affirm in part, and remand in part for additional findings of fact.
 
 *774
 
 I. Background
 

 DSS filed juvenile petitions on 12 March 2015 ("the petitions"), alleging that sixteen-year-old A.M. and six-year-old E.R. were abused, neglected, and dependent. The trial court entered nonsecure custody orders that same day and placed the Children in the custody of DSS. The petitions alleged Mother had an extensive history with DSS, which dated back to 2001. Mother has two daughters older than A.M. who left home at age sixteen. Mother relinquished her parental rights to her oldest child, a son. A.M. and her two older sisters were in foster care for approximately two years around the time Mother was pregnant with E.R.
 

 The petitions alleged Mother yelled and screamed at the Children and routinely called them derogatory names, such as "bitch," "slut," "hussy," and "ass." The petitions also alleged Mother tended to single out A.M. for cruel treatment. A.M. allegedly told a social worker she wanted to go into foster care again, but A.M. felt she was rearing E.R. and was worried about leaving her alone with Mother. The petitions further alleged that DSS had offered Mother numerous services, but Mother's inappropriate behavior continued.
 

 The trial court held an adjudication and disposition hearing on 15 April 2015. During the adjudicatory portion of the hearing, the following witnesses testified: Rebecca Blake ("Ms. Blake"), an intensive family preservation specialist who worked with Mother and the Children for approximately five weeks in 2014; Dr. Maria O'Tuel ("Dr. O'Tuel"), a licensed psychologist who conducted a Child/Family Forensic Evaluation with Mother and the Children; a family friend; an older sister of the Children; and Mother. At the conclusion of the hearing, the trial court adjudicated the children as abused, but declined to adjudicate the Children neglected or dependent.
 

 DSS filed a motion on 30 April 2015 asking the trial court to reconsider its ruling. The trial court held a hearing on the motion on 6 May 2015. In an order entered 11 June 2015, the trial court adjudicated the Children abused and neglected. The trial court entered a separate disposition order on the same day, concluding it was in the Children's best interest to remain in DSS custody. Mother appeals.
 
 [1]
 

 *674
 
 II. Abuse Adjudications
 

 Mother contends on appeal that the findings of fact in the adjudication order do not support the trial court's conclusion that the Children were abused. An abused juvenile is defined, in relevant part, as "[a]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker ... [c]reates or allows to be created serious emotional damage to the juvenile." N.C. Gen.Stat. § 7B-101(1)(e) (2013). This subsection also provides that "serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward [herself] or others."
 
 Id.
 
 "The role of this Court in reviewing an initial adjudication of [abuse] is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact."
 
 In re T.M.,
 

 180 N.C.App. 539
 
 , 544,
 
 638 S.E.2d 236
 
 , 239 (2006) (quotation marks omitted). Unchallenged findings are binding on appeal.
 
 See
 

 In re M.D.,
 

 200 N.C.App. 35
 
 , 43,
 
 682 S.E.2d 780
 
 , 785 (2009).
 

 In the present case, Mother does not challenge the findings in the adjudication order, and they are binding on appeal.
 
 See
 
 id.
 

 Instead, Mother contends the findings in the adjudication order do not support the trial court's conclusion that the Children were abused. Specifically, Mother argues the findings of fact fail to establish that either of the Children suffered from severe anxiety, depression, withdrawal, or aggressive behavior. She contends, therefore, that the findings fail to establish serious emotional damage.
 

 A. Abuse Adjudication of A.M.
 

 Regarding A.M.'s abuse adjudication, the trial court made the following findings:
 

 *775
 
 14. [A.M.] expresses
 
 hopelessness
 
 about [DSS's] involvement. She advised Dr. O'Tuel that [DSS] had been involved on numerous occasions, that ... [M]other did not like any of [DSS's] personnel and got irritated at all of them.
 

 15. Dr. O'Tuel believes, and the [c]ourt finds, that [A.M.'s] expressions of
 
 hopelessness
 
 [have] resulted in her
 
 withdrawal
 
 from the situation,
 
 withdrawal being her coping mechanism.
 

 ....
 

 *675
 
 17. ... [A.M.] expressed to her social worker that "I want you to figure out how I can leave legaly [sic]. I don't care if it is foster care I really just need to be out of here. Im [sic] tired of her always calling me names and threatening me and of this stuff. I should [not] ... have to sit here and deal with it. But no body [sic] seems to get that." This text demonstrates the
 
 anxiety
 
 under which the child suffers and the efforts on her part to
 
 with
 
 [
 
 draw
 
 ] from the situation.
 

 ....
 

 24. [A.M.] was upset by the names that ... [M]other called her. She expressed a sense of
 
 helplessness
 
 that anyone could help her. She does not feel that there are any programs that can be offered that can change ... [M]other's behavior.
 

 ....
 

 26. ... Dr. O'Tuel opined and this [c]ourt finds that "[t]he safety of the children is paramount as the functioning of the mother is severely compromised and her maltreatment appears intentional with no remorse evident or expressed."
 

 ....
 

 31. The toxic environment based upon continued foul and abusive language to which the children have been exposed creates a substantial risk of mental or emotional impairment. [A.M.] has expressed that she is upset by ... [M]other's constant tirades and believes that leaving the home, even being placed in foster care, would be preferable to remaining in the home. The [statements of A.M.] demonstrate[ ] the level of her
 
 anxiety
 
 and the desire to
 
 with
 
 [
 
 draw
 
 ] from the home situation.
 

 (Emphases added). Mother argues these findings of fact are insufficient because they do not reflect an actual mental health diagnosis. Mother also argues that, while the trial court used the terms "withdrawal" and "anxiety [,]" the trial court did not actually find that A.M. suffered emotional damage evidenced by these conditions. We are not persuaded.
 

 *676
 
 The findings of fact quoted above repeatedly state that A.M. was upset by Mother's behavior, that she felt a sense of hopelessness regarding the situation, and that her coping mechanism was withdrawal. Additionally, the trial court found that A.M.'s home life created anxiety for her. While the anxiety found by the trial court was not the product of a formal psychiatric diagnosis, N.C.G.S. § 7B-101(1)(e) imposes no such requirement.
 

 Mother also argues that the withdrawal A.M. suffered was not the withdrawal contemplated by N.C.G.S. § 7B-101(1)(e). Mother contends that A.M.'s withdrawal was not a manifestation of emotional abuse, but rather a desire to get away from Mother. Again, we disagree. While some of the findings of fact do show a desire by A.M. to leave Mother's home, the findings also demonstrate that A.M.'s coping mechanism was withdrawal. This view is supported by the evidence from the hearing. When asked about the impact on A.M. of Mother's yelling, screaming, and cursing, Dr. O'Tuel responded:
 

 That it definitely has a negative impact on her. It's manifested both-mostly in [A.M.] of her
 
 withdrawing emotionally from others
 
 as well as her difficulty trusting others. She seems to have this sense of ... learned helplessness and it just sort of means that, you know, no matter [what] I do nothing's going to change.
 

 (Emphasis added). Based on Dr. O'Tuel's testimony, it is apparent that the withdrawal found by the trial court was not only a
 
 *776
 
 manifestation of A.M.'s desire to leave Mother's home, but also of the psychological condition contemplated by N.C.G.S. § 7B-101(1)(e).
 

 Although the findings of fact do not track the specific language used in N.C.G.S. § 7B-101(1)(e), we nevertheless find them sufficient to sustain an adjudication of abuse based on serious emotional damage. "The trial court's written findings must address the statute's concerns, but need not quote its exact language."
 
 In re L.M.T.,
 

 367 N.C. 165
 
 , 168,
 
 752 S.E.2d 453
 
 , 455 (2013) (concluding that findings of fact in an order ceasing reunification efforts were sufficient where the order embraced the substance of the statutory provision). Here, the findings of fact address the statute's concerns regarding A.M.'s serious emotional damage. We, therefore, affirm the trial court's adjudication of abuse as to A.M.
 

 B. Abuse Adjudication of E.R.
 

 Regarding E.R.'s abuse adjudication, the trial court's only finding of fact that expressly touched solely on the emotional condition of
 
 *677
 
 E.R. stated: "[E.R.] had defiant behaviors and presented with a fear of sleeping in her own bed." Although Dr. O'Tuel opined that E.R.'s defiant behavior was related to inconsistent discipline and lack of structure or guidance from Mother, Dr. O'Tuel also stated Mother "is not attune[d] to [the Children's] emotional needs and indeed contributes to their denying their emotions to cope with the insults she spews daily." Dr. O'Tuel's evaluation showed that E.R.'s fear of sleeping in her own bed was related to (1) E.R.'s concern regarding Mother's health conditions; and (2) a sexual assault she allegedly suffered when she was three years old. However, Dr. O'Tuel also questioned "where was [Mother] during the alleged abuse incident in which someone broke into the house, took [E.R.], left the premises, and sexually abused her."
 

 There were other findings of the trial court demonstrating: (1) that E.R. witnessed Mother's tirades against A.M.; (2) that Mother's foul language was at times directed at E.R.; (3) that A.M. was concerned about E.R.'s emotional well-being should E.R. be left alone with Mother; and (4) that Mother's language was "demeaning, offensive[,] and not nurturing[.]" As to both A.M. and E.R., the trial court did find that "[t]he toxic environment based upon continued foul and abusive language to which the [C]hildren have been exposed creates a substantial risk of mental or emotional impairment." Although these findings were not sufficient to connect Mother's behavior to E.R.'s having "serious emotional damage [as] evidenced by ... severe anxiety, depression, withdrawal, or aggressive behavior toward [herself] or others,"
 
 see
 
 N.C.G.S. § 7B-101(1)(e), there was sufficient evidence presented at trial to support such a determination. Dr. O'Tuel stated that
 

 [e]motional abuse can involve ... screaming and cursing at a child, or calling a child names.... Every professional involved in this case, through documentation or interview, has indicated that the [C]hildren are experiencing severe emotional abuse by the [M]other.... This situation is chronic, with acute exacerbations, meaning verbal assaults by ... [M]other are a part of normal, everyday life for these girls, and ... [M]other is frequently worse at times.
 

 Dr. O'Tuel's evaluation further noted that "toxic stress ... occurs with strong, frequent or prolonged adversity, disrupts brain architecture and other organ systems, and increases risk of stress-related disease and cognitive impairment. It is highly likely that ... [M]other's interaction with her children qualifies as providing the toxic stress discussed here."
 

 *678
 
 We remand for the trial court to make findings of fact that address the directives of N.C.G.S. § 7B-101(1)(e) concerning E.R.'s serious emotional damage based on the evidence presented.
 

 III. Child Support
 

 Mother also challenges a decree in the trial court's disposition order. Specifically, the trial court ordered the Children's parents to "arrange to provide child support for the benefit of their children." Mother argues the trial court erred in ordering her to pay child support because the court failed to make necessary findings of fact in support of this decree and failed to specify an amount of child support. We agree.
 

 *777
 
 Pursuant to N.C. Gen.Stat. § 7B-904(d) (2013), a trial court is authorized to order a parent in a Chapter 7B proceeding to pay child support under the following circumstances:
 

 At the dispositional hearing or a subsequent hearing, when legal custody of a juvenile is vested in someone other than the juvenile's parent,
 
 if the court finds that the parent is able to do so,
 
 the court may order that the parent pay a reasonable sum that will cover, in whole or in part, the support of the juvenile after the order is entered. If the court requires the payment of child support, the amount of the payments shall be determined as provided in G.S. 50-13.4(c).
 

 (Emphasis added). Under N.C. Gen.Stat. § 50-13.4(c) (2013), which governs orders for child support in Chapter 50 proceedings,
 

 an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to meet the reasonable needs of the child and (2) the relative ability of the parties to provide that amount. These conclusions
 
 must themselves be based upon factual findings specific enough
 
 to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, (and) accustomed standard of living of both the child and the parents. It is a question of fairness and justice to all concerned.
 

 Coble v. Coble,
 

 300 N.C. 708
 
 , 712,
 
 268 S.E.2d 185
 
 , 189 (1980) (quotation marks omitted).
 

 *679
 
 In the present case, custody of the Children was vested in DSS; therefore, the trial court was authorized to order Mother to pay child support.
 
 See
 
 N.C.G.S. § 7B-904(d). However, the trial court also was obligated to find that Mother had the ability to pay support and determine a reasonable sum in accordance with N.C.G.S. § 50-13.4(d).
 
 See
 
 id.
 

 The trial court made no findings regarding Mother's income, ability to work, or ability to pay. Nor did the trial court make findings regarding the reasonable needs of the Children or an appropriate amount of support. Accordingly, we remand this matter to the trial court for additional findings and for entry of an order consistent therewith.
 
 See
 

 In re W.V.,
 

 204 N.C.App. 290
 
 , 296-97,
 
 693 S.E.2d 383
 
 , 387-88 (2010) (remanding a child support award for further findings of fact where the trial court failed to make findings of fact regarding the reasonable needs of the child and the relative ability of the parent to pay support).
 

 IV. Conclusion
 

 We affirm the adjudication of abuse as to A.M. and remand for additional findings as to the adjudication of abuse of E.R. Because Mother has not challenged the trial court's conclusion that the Children were neglected, we affirm the trial court's neglect adjudications. We remand the trial court's order for child support for further findings and for entry of an order consistent therewith. Because Mother has not otherwise challenged the trial court's disposition order, we affirm the remainder of it.
 

 AFFIRMED IN PART; REMANDED IN PART.
 

 Judges BRYANT and STROUD concur.
 

 [1]
 

 The fathers of the juveniles participated in the trial court proceedings but are not parties to this appeal.