IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-943

Filed: 21 July 2020

Gaston County, No. 18JA208-209

IN THE MATTER OF: K.W. & J.W.

Appeal by Respondent Mother from orders on adjudication and disposition entered 15 May 2019 and 2 July 2019, respectively, by Judge Pennie M. Thrower in Gaston County District Court. Heard in the Court of Appeals 9 June 2020.

*Elizabeth Myrick Boone for Petitioner-Appellee Gaston County Department of Social Services.*

*Matthew D. Wunsche for Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for Respondent-Appellant Mother.*

INMAN, Judge.

I. FACTUAL AND PROCEDURAL HISTORY

Father and Respondent-Appellant Mother are the parents of K.A.W. ("Kim") and J.M.W. ("Josh").[1] Mother and Father separated in February 2017 and received joint custody of the children. In September 2018, when the petition in this matter was filed, Kim was 13 years old and Josh was 7 years old.

---

[1] Pseudonyms are used to preserve the anonymity of the juveniles.

In February 2018, Kim was diagnosed with Generalized Anxiety Disorder. Prior to February 2018, there were no reports that either child was mistreated. In February 2018, Mother reported to Kim's therapist that Father physically abused the children and that Kim was afraid to go to Father's home for visitation. This information was reported to the Gaston County Department of Social Services ("GCDSS"), which opened an investigation. Kim did not visit Father during February or March 2018.

Between February 2018 and September 2018 Mother reported to physicians, therapists, social workers, and law enforcement various events of physical abuse and maltreatment of the children by Father, resulting in physical injuries and psychological impact. Investigations revealed Mother's reports to be false. Mother claimed after multiple visits with Father that the children had sustained injuries as a result of Father's physical abuse. GCDSS, during their investigation, never observed evidence the children were being physically abused, nor did medical examinations reveal injuries indicating abuse. Mother showed photographs she claimed showed injuries resulting from abuse to GCDSS investigators, but investigators did not see evidence of intentional injuries in these photographs. Mother reported to physicians that both children suffered from chronic headaches which she believed were caused by Father striking them on the head. The children's accounts of their headaches differed from Mother's, and a neurologist found both

children to be neurologically normal. After one visit between Josh and Father, Mother took Josh to the emergency room, claiming that he had suffered a concussion as a result of abuse by Father. Examining medical providers determined that Josh was not concussed. When told by physicians that the children were not in need of medical care or challenged by therapists or social workers on her allegations against Father, Mother became very upset.

Mother also reported to GCDSS and others that Father did not have sufficient food or bedding for the children in his house and that he locked the children in their bedrooms for long periods. Law enforcement officers and social workers investigated Father's house in response to these allegations and found them to be false. Mother also reported that Father withheld food from the children, but the children's own statements as well as receipts Father produced contradicted these reports.

In interviews with therapists and social workers, Kim and Josh sometimes confirmed Mother's allegations. Kim sometimes repeated Mother's allegations almost verbatim. Kim and Mother reported that during visits, Father would take Kim's phone and watch to prevent her from communicating with Mother. These allegations were contradicted by the observations of social workers and therapists. Both children alleged that Father shouted curse words at them, hit them, and denied them food. These allegations were not made consistently, and when pressed on them, the children were unable to provide details or context about instances of this

behavior. Kim expressed fear and anxiety about visiting with her father, and on two occasions refused to go to scheduled visitations for over an hour before finally agreeing to go.

Mother also alleged that Father had vandalized her home in order to threaten her. Other than her mailbox being out of place, her home and yard were undisturbed.

On 17 September 2018, GCDSS filed a petition in the District Court alleging that Kim and Josh were abused and neglected. That day, the court entered a non-secure custody order granting GCDSS custody and keeping the children in Father's care. Mother was allowed two hours of supervised visitation weekly.

Between 12 December 2018 and the trial court's initial disposition on 3 September 2019, several incidents occurred which led the court to limit Mother's visitation. On 30 January 2019, Mother brought to a visitation certain items Kim had asked for. When Kim said she no longer wanted the items, Mother began yelling at the juveniles, telling them to "have a nice life" and using profanity. After that incident, Kim requested more limited visitation with Mother. GCDSS began having Father park in a secure, gated area when he brought the children for visitation. Mother learned of this and, on one occasion, parked her car blocking the gate. When Mother saw law enforcement was present, she became angry and said she would not attend further visitation. In response to these incidents, the court limited visitation to once every two weeks. Then, on 28 March 2019, Lincoln County law enforcement

began investigating allegations that Mother had attempted to hire someone to kill Father. The court "in an abundance of caution" ordered that Mother have only electronic visitation with her children.

The trial court held an adjudicatory hearing on 4 and 5 February 2019, hearing testimony from Father and several other witnesses. The court entered two adjudication orders on 5 March 2019, one for each child, finding Kim neglected and abused and Josh neglected.

On 21 May 2019, the trial court held its disposition hearing. Mother was present at the hearing and unrepresented. The court did not hear any additional testimony at this hearing. The trial court heard argument from Mother regarding her psychological treatment, and a motion by Father requesting custody be transferred to him. After denying the motion the court orally ordered that Mother's visitation remain the same, except that GCDSS would have discretion to grant in-person visitation upon Mother making progress on her case plan. Mother appeals the Adjudication and Disposition Orders to this Court. Mother does not appeal from the trial court's adjudication of Kim and Josh as neglected.

## II. ANALYSIS

### A. Jurisdiction

Mother failed to raise each of the issues she identifies on appeal before the trial court. Generally, arguments not made before the trial court are not reviewable on

appeal, including in juvenile abuse, neglect, and dependency cases. *In re L.M.C.*, 170 N.C. App. 676, 678, 613 S.E.2d 256, 257 (2005). However, we have discretion under Rule 2 of the Rules of Appellate Procedure to review the merits of Mother's arguments. Given that Mother is indigent and proceeded *pro se* (with standby counsel) in the trial court, in our discretion we will review the trial court's decisions for error.

Mother also filed notice of her appeal with the trial court after the disposition hearing but before the court entered its order. Accordingly, we allow GCDSS's motion to dismiss the appeal. However, Mother has petitioned this court for a writ of certiorari. In our discretion we allow Mother's petition and proceed to the merits of her appeal.

### B. Evidence of Emotional Abuse after February 2018

Mother argues that the trial court erred in adjudicating Kim as an abused juvenile. Allegations in a petition alleging abuse must be proven by clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2019). We review the trial court's adjudication to determine whether the findings of fact are supported by clear and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re B.M.*, 183 N.C. App. 84, 88, 643 S.E.2d 644, 646 (2007).

In its 15 May 2019 order, the trial court adjudicated Kim abused, concluding that "Respondent/mother has created or allowed to be created serious emotional

damage to the juvenile by causing the juvenile to experience severe anxiety." Mother argues that because Kim was diagnosed with General Anxiety Disorder in February 2018, only events preceding that diagnosis are relevant to determining whether Kim was abused and whether that abuse caused her anxiety. Since anxiety need not be shown by a formal diagnosis and none of the trial court's findings are based on conduct or circumstances prior to February 2018, this argument is untenable.

When a parent "creates or allows to be created serious emotional damage to the juvenile," that juvenile is abused for purposes of the governing statute. N.C. Gen. Stat. § 7B-101(1)(e) (2019). This damage can be shown by the juvenile's "severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others." *Id.* Section 7B-101(1)(e) does not impose a requirement that a finding of anxiety be the product of a formal psychiatric diagnosis, so Mother's focus on Kim's diagnosis is misplaced. *In re A.M.*, 247 N.C. App. 672, 676, 786 S.E.2d 772, 775 (2016). Mother's argument essentially implies that the trial court should not consider emotional abuse suffered by a child who has been previously diagnosed with a psychological disorder— a child who may be especially vulnerable to that type of abuse.

Mother does not challenge the trial court's findings of fact supporting its conclusion that Kim was abused. Unchallenged findings of fact are binding on appeal. *In re K.B.*, 253 N.C. App. 423, 428, 801 S.E.2d 160, 164 (2017). The trial court found that Mother made allegations of physical abuse against Father which were not

substantiated, and in some cases were refuted by medical examinations, and accusations regarding Kim's living situation which were refuted by DSS inspection.

At times, Kim repeated the allegations of abuse made by Mother. A forensic evaluator found indicators of emotional abuse stemming from "the high level of acrimony and vilification of Respondent/father by Respondent/mother," and Kim told a therapist that she was anxious about being in the middle of the conflict between her parents and expressed "severe anxiety" about visits with Father. These findings support the trial court's conclusion adjudicating Kim as abused.

Mother also argues that the trial court erred because, in its conclusion of law regarding Kim's status as an abused juvenile, it identified Mother as the parent who created or allowed to be created serious emotional damage. The adjudication of a child as abused concerns only the status of the child, not the fault or culpability of the parent. *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). In light of the false allegations of abuse which the trial court found Mother made against Father, we cannot conclude that the trial court erred in providing clarity in its order. In any event, Mother has not identified any way in which the language of the adjudication prejudices her and has therefore not identified reversible error.

*C. Testimony at Disposition Hearing*

Mother argues that the trial court erred in failing to hear sworn testimony at the disposition hearing. She argues that an initial disposition hearing should

incorporate the same procedural requirements as a permanency planning hearing, including sworn testimony.

Mother's argument overstates the formal requirements of an initial disposition hearing. A proceeding to protect an allegedly abused, neglected, or dependent juvenile requires two hearings. *In re O.W.,* 164 N.C. App. 699, 701, 596 S.E.2d 851, 853 (2004). First, the trial court holds an adjudicatory hearing to determine if a child is abused, neglected, or dependent. *Id.* At this stage, heightened requirements are in place to "protect the rights of . . . the juvenile's parent" and "assure due process of law." N.C. Gen. Stat. § 7B-802 (2019). The trial court must apply the Rules of Evidence, N.C. Gen. Stat. § 7B-804 (2019), and can find a child abused, neglected, or dependent only if that status is proven "by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2019).

If the trial court finds at adjudication that the allegations in a petition have been proven by clear and convincing evidence and concludes based on those findings that a juvenile is abused, neglected, or dependent, the court then moves on to an initial disposition hearing. N.C. Gen. Stat. § 7B-901 (2019). At this stage, the trial court, in its discretion, determines the child's placement based on the best interests of the child. *O.W.*, 164 N.C. App. at 701, 596 S.E.2d at 853. Unlike the adjudicatory hearing, the initial dispositional hearing may be informal:

> The dispositional hearing may be informal and the court
> may consider written reports or other evidence concerning

the needs of the juvenile. The juvenile and the juvenile's parent, guardian, or custodian shall have the right to present evidence, and they may advise the court concerning the disposition they believe to be in the best interests of the juvenile. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, including testimony or evidence from any person who is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.

N.C. Gen. Stat. § 7B-901(a). In addition to considering evidence otherwise barred by the Rules of Evidence, the trial court may incorporate into its findings information obtained from written reports by the parties, as well as findings made at adjudication. *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 593-94 (2007); *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). The court may rely on written reports in the disposition hearing even if they have not been admitted into evidence. *In re M.J.G.*, 168 N.C. App. 638, 648-49, 608 S.E.2d 813, 819 (2005).

In this statutory two-step, the adjudication is a formal, adversarial process, aimed at determining the truth or falsehood of the allegations in the petition. Conversely, the initial disposition is inquisitive, and the trial court's principal consideration is the best interests of the child. Section 7B-901(a) explicitly allows the court in its disposition order to rely on written reports, and to incorporate the findings it made at the adjudication hearing. If these sources of fact are sufficient to support the trial court's conclusions of law and its ultimate disposition, there is no need for the court to hear additional testimony.

When a trial court's disposition order relies on information gained from individuals addressing the court during the disposition hearing, that information must be in the form of sworn testimony. *In re J.N.S.,* 207 N.C. App. 670, 679-80, 704 S.E.2d 511, 517-18 (2010). In *J.N.S.*, the trial court addressed various parties and family members during the disposition hearing and based some of its findings of fact upon the information that they provided, but none of these individuals were placed under oath. *Id.* We examined the record to determine if the remaining findings of fact, based upon the DSS and guardian *ad litem* reports, were sufficient to support the conclusions of law and disposition, and vacated the disposition order only because it relied on facts based on unsworn testimony. *Id.* In this case, by contrast, the record reflects that the trial court received no new information from individuals during the disposition hearing other than references to reports and the court's own findings in the adjudication order. And the absence of sworn testimony in a disposition hearing does not render the hearing improper.

Mother does not contest the findings of fact in the adjudication order or argue that those findings and the pre-disposition report submitted by GCDSS were insufficient to support the disposition order. The trial court did not err in proceeding with disposition absent the presentation of sworn testimony at the disposition hearing.

*D. Visitation*

The trial court's disposition order limited Mother's access to her children to electronic visitation, with discretion given to DSS to allow in-person visits if Mother makes progress on her case plan. Mother argues that there was no evidence to support a finding that face-to-face visitation was not in the best interests of the children, and that giving DSS discretion to allow in-person visits in the future is an impermissible delegation of judicial authority. We disagree.

Orders removing custody of children from their parents "shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2019). The court may order no visitation if it determines visitation is not in the best interest of the child. *See In re T.R.T.*, 225 N.C. App. 567, 572, 737 S.E.2d 823, 828 (2013). We review disposition orders, including visitation determinations, for abuse of discretion. *In re C.M.,* 183 N.C. App. 207, 215*,* 644 S.E.2d 588, 595 (2007). When reviewing for abuse of discretion, we defer to the trial court's judgment and overturn it only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. *In re. A.R.,* 227 N.C. App. 518, 520-21, 742 S.E.2d 629, 632 (2013). When determining visitation, the court considers the best interests of the child**.** N.C. Gen. Stat. § 7B-905(c).

Mother's argument regarding the visitation portion of the disposition order mirrors her argument as to the disposition order as a whole: that the court did not

hear testimony during the disposition hearing and therefore it abused its discretion in determining that visitation was inappropriate. But, as discussed above, the disposition hearing is the second part of the two-step adjudication-disposition process. It is an informal proceeding in which the court considers, in its discretion, the best interests of the child and may base its ruling on the findings made during the adjudication stage.

In its disposition order the court found that "due to concerns for the safety of the juveniles," electronic-only visitation was in their best interests. In its findings of facts in the adjudication order, the trial court found that Mother caused significant distress to the children in a number of ways, in particular fostering anxiety and fear of Father, frequently exposing them to unnecessary medical intervention, and failing to acknowledge her role in creating unreasonable fear of Father. This finding in the adjudication order followed sworn testimony and other evidence meeting the rigorous standard of clear and convincing evidence. Given the evidence before the trial court as to Mother's behavior, we cannot hold that determining electronic visitation was in the best interests of the children was an abuse of discretion.

Mother also argues that allowing DSS discretion to grant face-to-face visitation in the future is an impermissible delegation of judicial authority. We have held in the past that a disposition order that sets out a visitation plan and allows DSS to expand visitation is not an abuse of discretion. In *In re L.Z.A.*, the trial court ordered

that visitation continue "in accordance with the current plan," which provided for twice-weekly two-hour visits, and granted Mecklenburg DSS "discretion to expand visitation." 249 N.C. App. 628, 639, 792 S.E.2d 160, 169 (2016). We held that this satisfied the requirements of Section 7B-905.1(b). *Id.*

Mother cites *In re C.S.L.B.*, 254 N.C. App. 395, 829 S.E.2d 492 (2017) and *In re J.D.R.*, 239 N.C. App. 63, 768 S.E.2d 172 (2015) in support of her argument. However, both of these cases involve a grant of authority by the court to a guardian, not DSS, and are therefore distinguishable from this case. In *C.S.L.B.*, the disposition order provided for a minimum visitation schedule, but allowed the juveniles' guardian to unilaterally suspend visitation based on their "concerns." 254 N.C. App. at 400, 829 S.E.2d at 495. In *J.D.R.*, the order specified certain minimum visits but granted Father substantial discretion over expansion of visitation rights "contingent on Father deciding Mother has complied with the trial court's directives," which "effectively turned Father into Mother's case worker." 239 N.C. App. at 75-76, 768 S.E.2d at 179-80. We have consistently held that "[t]he court may not delegate this authority to the custodian." *In re Custody of Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971).

In this case, the discretion granted was not to a custodian, but to DSS. The disposition order sets out a minimum visitation schedule and allows DSS to expand

visitation if Mother makes progress on her case plan.[2] Mother has not identified, nor have we found, any caselaw that conflicts with *L.Z.A.*'s approval of an order granting DSS discretion to expand visitation. DSS has already been granted significant discretion by the legislature in managing visitation—under Section 7B-905.1(b), DSS may determine who will supervise visits and the location of visits, change the day and time if necessary, and may temporarily suspend visitation upon a good faith determination that the plan is not consistent with the juvenile's health and safety. The trial court complied with the statutory requirement of Section 7B-905.1(b) by considering the best interests of the child and ordering a visitation plan indicating a minimum frequency and length of visits. The disposition order only gives DSS discretion to expand visitation, not reduce it below the minimum set by the court. Allowing DSS to expand visitation contingent upon Mother's progress with her case plan is not an impermissible delegation of judicial authority.

## E. Failure to Inform of Right of Review

Mother argues that the trial court committed reversible error in failing to inform her of her right to move for review of its visitation plan. GCDSS and the guardian *ad litem* agree that the trial court did not inform Mother of this right. They disagree, however, as to whether this failure constitutes reversible error in an appeal

---

[2] We have held that electronic visitation does not constitute visitation as contemplated by Section 7B-905(c). *T.R.T.*, 225 N.C. App. at 574, 737 S.E.2d at 828. However, the court may order no visitation if it determines that is in the best interest of the child.

arising from an initial disposition. The guardian *ad litem* agrees with Mother that the case should be remanded so that the trial court can properly inform Mother of her right to file a motion for review of the trial court's visitation plan.

When a court in an abuse, neglect, and dependency case retains jurisdiction after a dispositional order, "all parties shall be informed of the right to file a motion for review of any visitation plan . . . ." N.C. Gen. Stat. § 7B-905.1(d). This Court has held that a trial court's failure to inform a party of this right in a permanency planning order can constitute reversible error. *In re J.L.*, ___ N.C. App. ___, ___, 826 S.E.2d 258, 268 (2019). In *J.L.* this Court vacated a trial court's permanency planning order and remanded the case because the order failed to notify the parties of their respective rights to move for review of the visitation plan and because "careful review of the transcript reveals that the trial court did not inform respondent of this right in open court." *Id.*

Here, as in *J.L.*, neither the disposition order nor the transcript of the hearing indicates that the trial court provided the required notice to Mother. But, unlike *J.L.*, this appeal arises from an initial disposition order, which the trial court is required to review "within 90 days from the date of the initial disposition hearing." N.C. Gen. Stat. § 7B-905(b). By contrast, the trial court is allowed up to six months to conduct a hearing to review a permanency planning order. N.C. Gen. Stat. § 906.1(a) (2019). *J.L.* is not directly controlling.

GCDSS argues that, because N.C. Gen. Stat. § 906.1(a) requires the trial court to schedule a review hearing "within 90 days from the date of the initial dispositional hearing," failure to inform the parties is harmless error. While we recognize the common sense merit of that argument, the statute does not make that distinction between these orders in its notice requirement. Accordingly, we agree with Mother and the guardian *ad litem* that this case must be remanded so that the trial court can enter an order compliant with N.C. Gen. Stat. § 905.1(d).

### III. CONCLUSION

For the above reasons, we hold that the trial court did not err in its adjudicating Kim abused or in its disposition. We remand to allow the trial court to inform Mother of her right to move that the visitation plan be reviewed.

AFFIRMED AND REMANDED.

Judges BRYANT and HAMPSON concur.