IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-597

Filed 01 August 2023

Vance County, Nos. 19 JA 05, 06, 07

IN THE MATTER OF: K.B., A.M.H., M.S.H.

Appeal by respondent mother from order entered 21 March 2022 by Judge S. Katherine Burnette in Vance County District Court. Heard in the Court of Appeals 23 May 2023.

> *Sheneshia B. Fitts for petitioner-appellee Vance County Department of Social Services.*

> *Freedman Thompson Witt Ceberio & Byrd PLLC, by Christopher M. Watford, for respondent-appellant-mother.*

> *Robinson, Bradshaw & Hinson, P.A., by Erica M. Hicks, for appellee guardian ad litem.*

DILLON, Judge.

Mother appeals from an order granting guardianship of her three children, Amy, Matt, and Kelly,[1] to the children's great aunt ("Great Aunt"), a North Carolina resident. On appeal, Mother challenges the trial court's decision to grant guardianship to Great Aunt (with whom the children have resided for several years),

---

[1] The children's pseudonyms were designated by the parties in accord with North Carolina Rule of Appellate Procedure 42(b).

instead of to Mother's mother ("Grandmother"), who resides in Georgia. The trial court restricted Mother, who also lived in Georgia, to electronic-only visitation.

## I. Background

In February 2019, the Vance County Department of Social Services ("VCDSS") filed juvenile petitions alleging that Amy, Matt, and Kelly were neglected and dependent, that domestic violence between the children's parents in their presence, as well as Mother's homelessness, "untreated mental health issues including a lack of medication management[,]" and previous alternative placements not working out. Based on the petitions, the trial court granted VCDSS non-secure custody with placement authority. About a week later, VCDSS placed all three children with Great Aunt in a kinship placement.

In April 2020, after hearings on the matter, the trial court adjudicated the children as dependent and neglected. The court entered a dispositional order setting the primary plan as reunification and the secondary plan as "custody with a court approved caretaker." The court further ordered VCDSS to retain custody and placement authority. The children's placement continued to be with Great Aunt.

Over the next three years, the trial court continued to hold dispositional hearings and enter orders. During this time, the trial court ordered that Grandmother be considered for placement and that a home study assessment by Georgia officials be completed to evaluate her fitness. Throughout this time, the children remained in the kinship placement with Great Aunt.

In May 2021, the trial court entered an order ceasing reunification efforts and shifting the primary plan to guardianship with a secondary plan of adoption.

On 21 March 2022, following a series of hearings spanning five months and prior to the completion of Grandmother's home study, the trial court entered an order granting Great Aunt guardianship of the children. In its order, the trial court also granted Mother "voluntary visitation two times per week . . . via electronic devices." The trial court noted "[t]he matter is closed" and relieved VCDSS and the GAL of further responsibilities, but noted it was "retain[ing] jurisdiction of this matter." Mother timely appealed.

## II.    Argument

Mother makes four arguments on appeal, which we address in turn.

### A.    Evidence that Guardian Understood Legal Significance

In awarding Great Aunt guardianship, the trial court determined she understood the legal significance of taking on that role as required by N.C. Gen. Stat. § 7B-600. Mother argues there was no evidence to support this determination. We disagree.

Before awarding guardianship, the trial court must, in part, determine the proposed guardian understands the legal significance of the placement. *See In re K.P.*, 383 N.C. 292, 306, 881 S.E.2d 250, 259 (2022). However, the trial court need not make specific findings to support this determination. *Id.* Rather, all that is required is that the record show the trial court received and considered adequate

evidence on this point.  *Id.*

Here, there was evidence that the children had been living with Great Aunt for three years, she had provided care for them, she had scheduled and taken the children to medical and dental appointments, she had potty-trained the children, and she had attended meetings with their teachers.  Additionally, Great Aunt testified that she wanted to continue providing care for them as their guardian and was willing do so without the assistance of VCDSS.  The evidence shows that she understood her obligations to comply with court orders regarding the children.  And during the last hearing, on cross-examination, she acknowledged that, as guardian, she would have more control over the children.  Though Great Aunt was not expressly asked about her understanding of her legal obligations, we are satisfied that the evidence shows the trial court received adequate evidence on this point.

B.     Failure to Wait for Completion of Home Study of Grandmother

Mother argues the trial court erred by granting Great Aunt guardianship of the children without the benefit of considering Grandmother as a placement option following completion of the home study.  She argues that the trial court was required by N.C. Gen. Stat. § 7B-903(a1) to wait for the home study of Grandmother previously ordered by the court be completed before ruling Grandmother out as a placement option for the children.  For the reasoning below, we conclude the trial court did not err or otherwise abuse its discretion in granting guardianship to Great Aunt, thus ruling out Grandmother, without the benefit of a home study on Grandmother.

Section 7B-903(a1) states that the trial court should consider the children's best interests when placing them in "out-of-home care," but that "[p]lacement of a juvenile with a relative outside of this State *must* be in accordance with the Interstate Compact on the Placement of Children ["ICPC"]." N.C. Gen. Stat. § 7B-903(a1) (2021). (emphasis added). We have held that, where the ICPC applies, "a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study." *See In re V.A.*, 221 N.C. App. 637, 640, 727 S.E.2d 901, 904 (2012).

Assuming the ICPC applies in this case, *see In re J.E.*, 182 N.C. App. 612, 643 S.E.2d 70 (2007) (holding that ICPC did not apply to an order granting guardianship to out-of-state grandparents), we conclude there is no obligation under the ICPC that a home study be completed *to rule out* an out-of-state relative as a placement option. The plain language of Section 7B-903(a1) states that the ICPC only applies where a child is actually placed with someone out-of-state, and only must be complied with with respect to the out-of-state person with whom the child is being placed. For instance, if the trial court was considering placement with ten different relatives in ten different states, the ICPC does not require the trial court to review a home study for all ten relatives but only for the out-of-state relative with whom the child is actually placed. That is, there is no requirement under the ICPC that the trial court consider home studies for the other nine relatives before ruling them out.

Mother argues, however, it was error for Judge Burnette, who entered the guardianship order we are reviewing, to grant Great Aunt guardianship without the

benefit of a home study on Grandmother where a different judge in a prior hearing had ordered the home study be completed. We conclude, however, that it was not an abuse of discretion for Judge Burnette to make a placement with an in-state person without the benefit of the previously ordered home study of an out-of-state person, so long as her findings and conclusions, otherwise, support her exercise of discretion in awarding guardianship.

And, here, we conclude the order does support Judge Burnette's discretionary decision to place the children with Great Aunt. For instance, the trial court found Great Aunt's home was the only home the children had ever known, her home is near other relatives, the children were generally doing well living with Great Aunt, and Grandmother already had three minor children in her home she was taking care of. Further, we note the trial court's findings that over many years, the children bonded with Great Aunt but not with Grandmother and that it would be in the children's best interest to remain in the only home they have ever known.

It may be that VCDSS inappropriately delayed in following through on its obligation to request a home study of Grandmother as was previously ordered, as the dissent in this case suggests. Notwithstanding, the matter was properly before Judge Burnette in the latest round of hearings, and she had the discretion both to enter her guardianship order without the benefit of the home study and to deal with VCDSS' behavior separately, as may be warranted.

In sum, it may be an abuse of discretion in some cases *to rule out* a placement

option, whether in-state or out-of-state, without the benefit of a home study assessment. It may be an abuse of discretion in some cases to place a child with an in-state person without a home study assessment of that person. In such cases, when the child is placed with an in-state person, the issue is whether the trial court abused its discretion in conducting its "best interests of the child" analysis without the benefit of a home study. However, pursuant to Section 7B-903, it is only when a trial court judge *actually places a child with an out-of-state person* that the trial court lacks discretion to make that placement without the benefit of a home study *of that person*, because such study is required under the ICPC. However, since Judge Burnette ordered that the children remain with their in-state Great Aunt, we need only consider whether it was an abuse of discretion for her to do so without the benefit of a home study of Grandmother. And, for the reasons above, most notably that the children have now lived with Great Aunt for several years and have bonded well with her, we conclude that Judge Burnette did not abuse her discretion.

### C. Order Stating "The Matter is Closed"

In the decretal portion of her order, Judge Burnette stated that "[t]he matter is closed and [VCDSS] and its counsel are released and relieved of further responsibilities regarding this matter." Mother contends that the clause "[t]he matter is closed" constitutes error to the extent that the clause could be construed as stating the entire case has been resolved. Mother notes this clause may simply refer to the matter being closed as far as VCDSS is concerned. We do not read the clause as

preventing Mother from filing motions in the future concerning her children. Her parental rights have not been terminated, and she was granted visitation rights in the trial court's order.

### D. Electronic Visitation

The trial court granted Mother certain visitation rights as follows:

> That there is voluntary visitation two times per week between each of the juveniles in the care of Ms. P[] and [Mother],via electronic devices. The Respondent [M]other is allowed to continue these visits.

Mother argues the trial court abused its discretion by failing to comply with Section 7B-905.1 in this visitation. As Mother asserts, this visitation provision raises two concerns: (1) the findings are not sufficient to support the grant of electronic-only visitation; and (2) the order improperly delegates visitation decisions to the parties. *See In re J.R.*, 279 N.C. App. 352, 366, 866 S.E.2d 1, 10 (2021) (stating that our Court "reviews the trial court's dispositional orders of visitation for an abuse of discretion") (citation and quotation marks omitted).

We agree that the visitation provision does not properly support the grant of electronic-only visitation. When a juvenile is placed outside the home, North Carolina General Statute § 7B-905.1(a) requires trial courts to "provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation." N.C. Gen. Stat. § 7B-905.1(a) (2021). This Court has previously held the provision of electronic-only visitation is equivalent to the trial

court granting no visitation. *See In re T.R.T*, 225 N.C. App. 567, 573, 737 S.E.2d 823, 828 (2013) (agreeing with argument on appeal that visitation exclusively over Skype "effectively denie[d]" the mother visitation "as contemplated by" North Carolina General Statute § 7B-905(c)); *see also In re K.M.*, 277 N.C. App. 592, 601 n. 2, 861 S.E.2d 10, 16 (2021) (explaining § 7B-905(c) has been "substantively recodified" as § 7B-905.1(a)).

As a result, while a trial court may grant electronic-only visitation, the court must make specific findings to justify it that are equivalent to the findings a trial court must make when it sets no visitation. *See In re T.R.T*, 225 N.C. App. at 574, 737 S.E.2d at 829 (order failed to comply with § 7B-905(c) because "[d]espite denying visitation, the trial court did not make any specific findings that [the] respondent-mother forfeited her right to visitation or that visitation would be inappropriate under the circumstances"); *see also In re K.M.*, 227 N.C. App. at 602-04, 861 S.E.2d at 16-18 (distinguishing *In re T.R.T.* and holding the trial court did not abuse its discretion in suspending a mother's supervised in person visitation and only allowing "weekly video contact" because the trial court "ma[d]e specific findings that visitation would be inappropriate" other than supervised visitation, which could not take place because of the pandemic); *In re T.H.*, 232 N.C. App. 16, 34-35, 753 S.E.2d 207, 219 (2014) (remanding for entry of visitation order because the trial court failed to provide any visitation and had not made findings that the mother "had forfeited her right to visitation or that it was in the best interests of [the children] to deny visitation.")

Specifically, to grant electronic-only visitation, the trial court must make "specific findings that" a parent "forfeited her right to visitation or that visitation would be inappropriate under the circumstances." *In re T.R.T*, 225 N.C. App. at 574, 737 S.E.2d at 829.

Here, the trial court granted electronic only visitation without any "specific findings" that Mother "forfeited her right to visitation or that visitation would be inappropriate under the circumstances." *See id*. at 574, 737 S.E.2d at 829. The trial court's only findings regarding visitation stated:

> 12. The current visitation plan between the [M]other . . . who resides in Georgia, and the juveniles include weekly virtual visits and telephone calls. The calls are initiated by the biological [M]other of the children[.]
> . . . .
> 14. The [M]other's last in person visit with the juveniles was in December, 2020.
> . . . .
> 23. [Mother] has not been consistent on visits with the three juveniles. She has made calls to [Ms. P's] household during school hours and dinner time. She forgets what times the children are in school and when they eat dinner.

These findings do not meet the requirements for electronic-only visitation. On remand, the trial court has discretion to grant electronic-only visitation or any other visitation provision, *see In re J.R.*, 279 N.C. App. at 366, 866 S.E.2d at 10 ("[t]his Court reviews the trial court's dispositional orders of visitation for an abuse of discretion"); but if the trial court wishes to set electronic-only visitation, it must make the required findings. *In re T.R.T*, 225 N.C. App. at 574, 737 S.E.2d at 829. We also

note that if the children remain in North Carolina and Mother remains in Georgia, frequent in-person visitation may not be practical for Mother due to the cost and distance, but those factors alone may not justify the complete elimination of any possibility of in-person visitation, assuming the absence of other reasons to deny in-person visitation.

Turning to Mother's second area of concern, we agree that the visitation provision improperly delegates authority regarding her visitation. Trial courts must "provide a framework for . . . visitations." *In re N.B.*, 240 N.C. App. 353, 364, 771 S.E.2d 562, 570 (2015); *see also In re M.M.*, 230 N.C. App. 225, 240, 750 S.E.2d 50, 59 (2013) (terming the failure to provide such a framework as "leav[ing] the terms of visitation in the discretion of the custodian.")[2] Specifically, North Carolina General Statute § 7B-905.1(c) provides:

> If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.

---

[2] *In re M.M.* used this language in reference to an old line of cases stemming from *In re E.C.* that required the court to provide for the "time, place and conditions under which visitation may be exercised." *In re M.M.*, 230 N.C. App. at 239-40, 750 S.E.2d at 59 (quoting *In re E.C.*, 174 N.C. App. 517, 523, 621 S.E.2d 647, 652 (2005)). While *In re E.C.*'s requirement a trial court provide "the time, place, and conditions of visitation" was abrogated by the enactment of North Carolina General Statute § 7B-905.1, the new statute still provides a new, more limited framework. *See In re N.B.*, 240 N.C. App. at 364, 771 S.E.2d at 570 (explaining how *In re E.C.* was abrogated after stating the new statute "only require[s] the trial court to provide a framework for . . . visitations.") As such, when the trial court has not complied with the requirements of § 7B-905.1, we still refer to this as leaving the terms of visitation to the discretion of the custodians.

N.C. Gen. Stat. § 7B-905.1(c) (eff. 1 Oct. 2021). Thus, the trial court must include three pieces of information when ordering visitation: (1) minimum frequency; (2) length of the visits; and (3) supervision, or lack thereof, necessary for the visits. *Id.*

In the order on appeal, the visitation provision only addresses one of the three required elements. *See id.* While the minimum frequency of the visits is two times per week, the trial court's order does not address the length of the visits or whether they need to be supervised. As a result, to the extent the trial court, in its discretion, provides for visitation on remand, it must at least address the minimum frequency, length, and supervision, or lack thereof, for the visits. *See id.*; *see also In re J.R.*, 279 N.C. App. at 367, 866 S.E.2d at 10.

## II.    Conclusion

We vacate the portion of the order granting Mother electronic-only visitation due to both the lack of any findings that electronic-visitation would be in the children's best interest and the trial court's failure to address the frequency, length and supervision (or lack thereof) concerning the visitation. We remand the matter to the trial court to reconsider Mother's visitation and enter an order that complies with Section 7B-905.1 of our General Statutes.

We affirm the order in all other respects.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judge CARPENTER concurs.

Chief Judge STROUD concurs in part and dissents in part by separate opinion.

No. COA22-597 – *In re: K.B., A.M.H., M.S.H.*

STROUD, Chief Judge, concurring in part, dissenting in part.

I agree with the Majority Opinion on three of the four issues: (1) the legal significance of guardianship, (2) the trial court's statement that the "matter is closed[,]" and (3) visitation. But I disagree with the Majority Opinion that the trial court could make a placement determination without waiting for the ICPC home study of Grandmother, after having thrice ordered this study be obtained. Therefore, I concur in part and dissent in part.

I first note the potential importance of this opinion. The Majority Opinion reduces a statutory mandate established to protect the best interests of abused, neglected, or dependent children to a mere discretionary question. In other words, the Majority Opinion holds that trial court has the discretion to ignore the statute and prior court orders. The Majority Opinion also overlooks egregious and unexplained delays and multiple violations of court orders by VCDSS. This case sets a dangerous precedent for the most vulnerable members of our society—children who are abused, neglected, or dependent. Departments of Social Services and Child Protective Services agencies have an incredibly important and difficult job, and most do this job admirably. But I fear those who do not do this job properly will be able to rely on the Majority Opinion to justify their failures to act, up to and including ignoring court orders directing them to take a specific action. The Majority Opinion also gives credence to VCDSS's argument that the ultimate placement of a child is up to the Department of Social Services; the trial court just serves as a rubber stamp for

the Department's decision.

As an initial matter regarding the home study issue, the Majority Opinion improperly reviews for abuse of discretion rather than *de novo*. The Majority Opinion "conclude[s] the trial court did not err or *otherwise abuse its discretion* in entering its order granting guardianship to Great Aunt without the benefit of a home study of Grandmother." (Emphasis added.) While in general this Court "review[s] a trial court's determination as to the best interest of the child for an abuse of discretion[,]" *In re C.P.*, 252 N.C. App. 118, 122, 801 S.E.2d 647, 651 (2017) (citation and quotation marks omitted), Mother argues on appeal the failure to investigate a potential placement with Grandmother, who lives in Georgia, constituted "an inexcusable breach of [the] statutory commands" of North Carolina General Statute § 7B-903(a1) to comply with the ICPC, N.C. Gen. Stat. § 7B-3800 *et seq.* (2021), when "determin[ing] whether a child should be placed with a willing and able relative that lives outside of North Carolina." *See* N.C. Gen. Stat. § 7B-903(a1) (eff. 1 Oct. 2021). This Court "review[s] statutory compliance *de novo*[,]" *see In re N.K.*, 274 N.C. App. 5, 13, 851 S.E.2d 389, 395 (2020) (stating in a case about § 7B-903(a1)), rather than for an abuse of discretion.

In addition to the Majority Opinion's incorrect standard of review, I also note the Majority Opinion's suggestion the ICPC may not even apply here relies on caselaw this Court has determined we are not bound by. Specifically, as part of merely "[a]ssuming the ICPC applies in this case[,]" the Majority Opinion cites to *In*

*re J.E.*, 182 N.C. App. 612, 643 S.E.2d 70 (2007) and says it holds the ICPC does not apply to a grant of guardianship to out-of-state grandparents. While the Majority Opinion accurately states *In re J.E.*'s holding, *see id.* at 615, 643 S.E.2d at 72, the Majority does not acknowledge this Court's opinion in *In re J.D.M.-J.* The *In re J.D.M.-J.* Court concluded, after an analysis under *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989), this Court is not bound by *In re J.E. See In re J.D.M.-J.*, 260 N.C. App. 56, 63, 817 S.E.2d 755, 760 (2018) (determining *In re J.E.* and the other case the Majority Opinion cites, *In re V.A.*, 221 N.C. App. 637, 727 S.E.2d. 901 (2012), "are in conflict" before concluding "we are bound by" *In re V.A.* and an earlier case on which it relies, *In re L.L.*, 172 N.C. App. 689, 616 S.E.2d 392 (2005), *abrogated in part on other grounds by In re T.H.T.*, 362 N.C. 446, 450-53, 665 S.E.2d 54, 57-59 (2008)). Instead, as *In re J.D.M.-J.* states by relying on the other case cited by the Majority Opinion (*In re V.A.*), under the ICPC, "custody placement with . . . out-of-state relatives . . . trigger[s] the requirements of the ICPC." *See In re J.D.M.-J.*, 260 N.C. App. at 63, 817 S.E.2d at 760 (citing *In re V.A.*, 221 N.C. App. at 640-41, 727 S.E.2d at 904) (concluding the ICPC applies to placement with out-of-state relatives because they count as a "placement in foster care" under the ICPC (emphasis omitted)); *see also* N.C. Gen. Stat. § 7B-3800, Art. III(b) (ICPC section stating it applies to placement "in foster care or as a preliminary to a possible adoption"). So I disagree we need to *assume* the ICPC applies; under our past caselaw, the ICPC definitively applies to the situation here where there is a potential placement with an out-of-state

3

relative, Grandmother. *See In re J.D.M.-J.*, 260 N.C. App. at 63, 817 S.E.2d at 760 (explaining, under a line of cases it later holds this Court is bound by, that "custody placement with . . . out-of-state relatives . . . trigger[s] the requirements of the ICPC"). And aside from these statements of the law in other cases, in *this* case, the trial court itself had thrice ordered VCDSS to do the ICPC home study. Those orders were not appealed. VCDSS does not contend the trial court erred by entering those orders, nor does VCDSS give any rational explanation for its failure to comply with the trial court's three orders.

Turning to the crux of the matter, I disagree with the Majority Opinion's determination that the ICPC only applies when a child is actually placed with an out-of-state relative. This interpretation is exactly the opposite of the actual purpose of the ICPC. While North Carolina General Statute § 7B-903(a1) states, "Placement of a juvenile with a relative outside of this State must be in accordance with the Interstate Compact on the Placement of Children[,]" N.C. Gen. Stat. § 7B-903(a1), to hold, as the Majority Opinion does, that the ICPC only applies to placement with an out-of-state relative, and not when an ultimate placement decision settles on an in-state relative instead of an out-of-state relative also under consideration, (1) does not comport with the purpose of the abuse, neglect, dependency subchapter of the Juvenile Code and (2) does not comport with the ICPC's goal to provide information to help make the ultimate determination between an in-state and out-of-state relative.

4

First, the Majority Opinion's view of the ICPC study as a step to be taken *after* the trial court has made a decision to place a child in an out-of-state placement entirely contradicts the goal of attaining permanency for children as soon as possible. *See* N.C. Gen. Stat. § 7B-100(5) (2021) (listing, as a purpose of the subchapter of the Juvenile Code on abuse, neglect, dependency, "[t]o provide standards . . . for ensuring that the best interests of the juvenile are of paramount consideration by the court and that when it is not in the juvenile's best interest to be returned home, the juvenile will be *placed in a safe, permanent home within a reasonable amount of time*" (emphasis added)). A trial court may order the ICPC home study to be initiated at any point in the process if the court identifies a potential out-of-state placement for the child. Here, the first order directing a home study of Grandmother was rendered *a few days* after the petition was filed. Had VCDSS complied with the first order, or the other two orders directing VCDSS to "initiate" the ICPC home study and to "expedite" the ICPC home study, the trial court would have had the home study long before the final hearing. If a trial court had to wait until it was ready to make a final determination even to order an ICPC home study, this delay would be detrimental to the children and would prolong the process in getting to permanency for the children.

Turning to the disconnect between the Majority Opinion's interpretation and the purposes of the ICPC, in relevant part, the ICPC lists these purposes:

> It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that:

. . . .

(b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child.

(c) The proper authorities of the state from which the placement is made may obtain *the most complete information on the basis of which to evaluate a projected placement before it is made.*

(d) Appropriate jurisdictional arrangements for the care of children will be promoted.

N.C. Gen. Stat. § 7B-3800, Art. I (emphasis added). To support these purposes, Article III of the Compact sets forth an exchange of information between states to ensure any placement outside of the initial state, here North Carolina, "does not appear contrary to the interests of the child[:]"

(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this Article and with the applicable laws of the receiving state governing the placement of children therein.

(b) Prior to sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice shall contain:
(1) The name, date, and place of birth of the child.
(2) The identity and address or addresses of the

6

parents or legal guardian.
(3) The name and address of the person, agency or institution to or with which the sending agency proposes to send, bring, or place the child.
(4) A full statement of the reasons for such proposed action and evidence of the authority pursuant to which the placement is proposed to be made.

(c) Any public officer or agency in a receiving state which is in receipt of a notice pursuant to paragraph (b) of this Article may request of the sending agency, or any other appropriate officer or agency of or in the sending agency's state, and shall be entitled to receive therefrom, such supporting or additional information as it may deem necessary under the circumstances to carry out the purpose and policy of this Compact.

(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

N.C. Gen. Stat. § 7B-3800, Art. III.[3]

Based on these requirements in Article III of the ICPC, this Court has held "a child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study." *See In re V.A.*, 221 N.C. App. at 640, 727 S.E.2d at 904 (quoting

---

[3] As discussed above, while the language of the ICPC states it applies to placement "in foster care or as a preliminary to a possible adoption[,]" N.C. Gen. Stat. § 7B-3800, Art. III(b), this Court has previously held "custody placement with . . . out-of-state relatives [is] a 'placement in foster care,' thereby triggering the requirements of the ICPC." *See In re J.D.M.-J.*, 260 N.C. App. at 63, 817 S.E.2d at 760 (quoting *In re V.A.*, 221 N.C. App. at 640-41, 727 S.E.2d at 904) (discussing *In re V.A.* as part of a conflict between case lines from this Court and then later holding this Court is "bound by" the *In re V.A.* line of cases).

*In re L.L.*, 172 N.C. App. at 702, 616 S.E.2d at 400) (stating this requirement directly after discussing Article III of the ICPC).  Thus, a home study ultimately helps provide "the most complete information on the basis of which to evaluate a projected placement before it is made."  N.C. Gen. Stat. § 7B-3800, Art. I(c); *see also In re L.L.*, 172 N.C. App. at 702, 616 S.E.2d at 400 (linking the requirement of an ICPC home study to the ICPC's goal "that states will cooperate to ensure that a state where a child is to be placed 'may have full opportunity to ascertain the circumstances of the proposed placement' and the [s]tate seeking the placement 'may obtain the most complete information on the basis of which to evaluate a projected placement before it is made'" (quoting N.C. Gen. Stat. § 7B-3800, Art. I(b), (c))).

Here, the Majority Opinion allows placement with an in-state relative, Great Aunt, without requiring the trial court to receive complete information on an out-of-state relative, Grandmother.  Instead, the Majority Opinion determines (1) the trial court could make a placement determination before receiving a home study as long as the trial court's findings supported its conclusions and (2) in this case, the findings did support the conclusions.  The issue with such a holding is that it assumes the placement decision would be the same—*i.e.* with an in-state relative such that compliance with the ICPC would not be required under the Majority Opinion's reading of North Carolina General Statute § 7B-903(a1)—even after the home study is complete.  But that assumption cannot be sustained under the facts.

The trial court made findings about Grandmother, based on the limited

8

information before the trial court, to support its conclusion placement with her would be contrary to the children's best interest, but the home study could have provided information that may have affected those findings. For example, the trial court found:

> 59. The three juveniles in this case have not bonded with [Grandmother] or with [Grandmother's] three older children and each juvenile in this case would be one of six children in the [Grandmother's] household as opposed to being one of three children in a household wherein the only other children in the household are their siblings in the current household of [Great Aunt].

A home study could have addressed the bond of the children with Grandmother.[4] A home study also could have addressed how Grandmother would deal with balancing the needs of her three older children and of the three children whose custody is at issue in this case. Some caretakers can care for multiple children very well; some caretakers struggle with caring for even one child. Without the ICPC home study, it is impossible to be certain what we, the parties, or the trial court would learn about Grandmother's home or her capacity to care for more children. Because of that uncertainty, I disagree with a blanket holding the ICPC does not apply when a child is placed in-state instead of with an out-of-state relative who is a placement option.

I also recognize that under different facts, the trial court's failure to wait for

---

[4] We also note a three-year delay by VCDSS in requesting the ICPC home study, discussed in greater detail below, effectively eliminated any opportunity Grandmother might have had to develop or strengthen her relationship with her grandchildren during this time.

the ICPC home study might be harmless. So I would also not make a blanket holding the other direction and always require a trial court to wait for completion of an ICPC home study when a potential out-of-state relative placement is identified, even if the trial court had ordered the study. Circumstances can change and a trial court may have good reason—such as an out-of-state relative no longer being available to be a placement option after lengthy proceedings—to forgo the home study. Instead, I would analyze whether the trial court should have waited for the home study in this case.

Here, I would ultimately conclude the trial court was required to wait for a home study. First, the trial court repeatedly ordered the home study and even continued the hearing that led to the order on appeal because the home study had not yet been received. Second, the home study was delayed not because of any fault of Mother or Grandmother but rather because of VCDSS's repeated failures to comply with the trial court's orders to initiate the home study.

From the very start of the case, only a few days after filing of the petition, Grandmother in Georgia was identified as a potential placement for the children, and the trial court initially ordered Grandmother "be investigated as a possible placement" in February 2019, although the order was not written down and filed until April 2020. This order notes it was "entered in open court[,]" and we have no reason to believe VCDSS was not aware of the trial court's directive for this home study in

February 2019, even if the written order was filed woefully late, nearly a year later.[5] While that order did not explicitly mention an *ICPC* home study, placement with Grandmother in Georgia would have required an ICPC home study. *See In re V.A.*, 221 N.C. App. at 640, 727 S.E.2d at 904 ("[A] child cannot be placed with an out-of-state relative until favorable completion of an ICPC home study.").

Then, in an order rendered in open court on 25 February 2021 but not written and entered until 25 May 2021, the trial court explicitly ordered VCDSS to "initiate the ICPC" for Grandmother. Third, in an order rendered 7 July 2021 but not filed until 20 January 2022, the trial court specifically ordered the ICPC home study of Grandmother "be expedited." Finally, on 25 August 2021, the trial court entered an order to continue hearing of the case to 18 October 2021. The stated reason for the continuance was:

> "For the court to receive additional evidence, reports, or assessments requested by the court or one of the parties.

---

[5] The delays in filing written orders continued throughout the case. The record does not reveal the reason the written orders were significantly delayed in this case, especially given all of the adjudication, disposition, and permanency planning orders were required by statute to be written and entered within 30 days after the completion of the relevant hearings. *See* N.C. Gen. Stat. § 7B-807(b) (2021) (mandating adjudication orders "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing"); N.C. Gen. Stat. § 7B-905(a) (eff. 1 Oct. 2015 to 30 Sept. 2021) (stating dispositional orders "shall be in writing, signed, and entered no later than 30 days from the completion of the hearing"); N.C. Gen. Stat. § 7B-906.1(h) (eff. 1 Oct. 2021) (requiring permanency planning orders "be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing"); N.C. Gen. Stat. § 7B-906.1(h) (eff. 1 Oct. 2019 to 30 Sept. 2021) (previous permanency planning statute including identical timing requirements as current statute); *see also* N.C. Gen. Stat. § 7B-905(a) (eff. 1 Oct. 2021) (current version of dispositional order statute also requiring written order be entered within 30 days).

Given these delays, in general, I follow the dates the orders state they were rendered in open court rather than the dates they were filed, which no parties dispute.

11

> **That the results of the ICPC have not been received
> by the VCDSS."**

(Emphasis in original.) Notably, despite the Majority Opinion's discussion of how a different judge than Judge Burnette had initially ordered the ICPC home study, Judge Burnette entered the order expediting the home study *and* continued the case because the home study had not been received.

Despite these orders and the continuance by the trial court, VCDSS had not even *requested* the home study from Georgia when the hearing in October 2021 began, as it was not requested until 5 November 2021. And the home study had not been completed by the last hearing date in February 2022 that was part of the proceedings that led to the guardianship order on appeal. During the series of hearings that led to the guardianship order—contrary to the statement by VCDSS's counsel at the start of the hearing that "It has been sent to Georgia, but we do not have results"—the VCDSS social worker on the case testified she did not send the ICPC on Grandmother to Georgia until 5 November 2021. The VCDSS social worker also explicitly testified this delay with the ICPC had nothing to do with Grandmother. Instead, VCDSS waited almost three years between the time when it was clear an ICPC home study would be necessary (February 2019), *see In re V.A.*, 221 N.C. App. at 640, 727 S.E.2d at 904 (requiring an ICPC home study for an out-of-state relative placement), and the time it initiated the ICPC process by sending the ICPC to Georgia (November 2021). VCDSS failed to comply with the trial court's three orders—in February 2019, to

investigate Grandmother as a potential relative placement; in February 2021, to initiate the ICPC home study; and in July 2021, to expedite the home study. VCDSS continued to delay in *ordering* the home study even after the trial court's August 2021 order continuing hearing of the case to October expressly to obtain the home study from Georgia.

I also note that Mother did not abandon or waive her request for a home study of Grandmother but continued to assert the need for the study throughout the case and in the final hearing. Grandmother also participated in the hearing. When Mother's attorney asked at the end of the proceedings if the home study would "still be proceeding[,]" the trial court did not respond:

> [Mother's attorney]: Okay. Will the home study still be proceeding while this is going on?
> THE COURT: (No audible response.)
> [Mother's attorney]: Okay. So that – that's out of your hands. That's just . . .
> THE COURT: I do want to reiterate something [attorney advocate for the GAL] said. It is wonderful to see so many relatives with interest in these children.
> [Mother's attorney]: I agree, Your Honor.
> THE COURT: And I appreciate that.
> [Mother's attorney]: I do agree.
> THE COURT: All right.

As a result, by the end of the proceedings, despite three court orders and a continuance expressly to get the home study, no ICPC home study had been done to evaluate the suitability of Grandmother as a placement option.

Only VCDSS was at fault for the failure to obtain the home study; neither

13

Grandmother nor Mother contributed to the delay. Rather, VCDSS had not initiated the home study as repeatedly ordered by the trial court. VCDSS also made misrepresentations to the trial court about the status of the request for the home study at the beginning of the hearing in October, claiming the request had been sent to Georgia, when in fact VCDSS did not send the request until November 2021.[6]

VCDSS's defense of its actions and inactions on appeal is also disconcerting. VCDSS repeatedly contends the delay in getting the ICPC home study done combined with the home study's lack of bearing on the children's placement given VCDSS's placement authority to make a determination means the trial court did not err. VCDSS argues:

> The juveniles have been in a kinship placement with [Great Aunt] since February 28, 2019, thirty-five (35) months. Reunification efforts were ceased and the primary plan changed to guardianship on February 25, 2021. In the same order, the court ordered that VCDSS initiate an ICPC but that DSS would also make the determination on the placement. *I would argue that the ICPC would not have had a bearing on the placement of the children. That still would have been up to DSS to make the determination.* (R. 162). Moreover, the request for the ICPC to be expedited did not occur until July 7, 2021.
>
> The Juvenile Code states that when the court places the child in out-of-home care with a relative outside of North Carolina, that dispositional placement "must be in accordance with the["] ICPC. N.C. Gen. Stat. § 7B-903(a)(1). *It is the Petitioner's contention that it did not*

---

[6] The record does not reveal whether this misrepresentation was intentional or just negligent, but VCDSS's representation to the trial court that the home study had been ordered prior to November 2021 was clearly not true.

> *intend to place the children in the home of [Grandmother],*
> which would have removed them from the home that they
> have known for the past thirty-five (35) months with [Great
> Aunt] and place them in the home of a relative that they
> did not have a relationship with . . . . [G]randmother was
> not even aware that the children were in the custody of
> DSS until 2020 because she and the Respondent-Mother
> did not have a good relationship and the status of their
> relationship did not change until 2020. (R. 290).

(Emphasis added.) VCDSS's arguments misapprehend the situation.

First, VCDSS's reliance on the delay in the ICPC home study to justify continued placement with Great Aunt ignores the fact that *VCDSS was responsible for that delay and that it failed to comply with the trial court's three orders.* As recounted above, VCDSS failed to initiate the ICPC process for almost three years after the trial court initially rendered an order that Grandmother should be investigated. And the delay was not the fault of Grandmother but rather the fault of VCDSS. As VCDSS is entirely at fault for the delay with the ICPC home study even being initiated, it cannot now defend the trial court's decision to not wait for the home study by pointing to its own delay.

Further, VCDSS's argument about placement authority misunderstands the scope of its authority and the stage in proceedings at issue in this appeal. To support its contention, VCDSS seems to contend it—not the trial court—would make the final placement determination by citing to the permanency planning order filed 25 May 2021. While that order granted VCDSS legal and physical custody with placement discretion, the order on appeal involved removing custody from VCDSS and instating

Great Aunt as the children's guardian. When making the determination of whether Great Aunt or Grandmother would have custody, VCDSS thus did not have any sort of placement authority because it no longer would have custody.

VCDSS's placement authority only stemmed from the trial court's decision to grant it custody with placement authority. *See* N.C. Gen. Stat. § 7B-903(a) (authorizing "any *court* exercising jurisdiction" in an abuse, neglect, dependency proceeding to make a choice as to disposition where those choices include placing the juvenile with DSS (emphasis added)). In making a determination of whether to give custody or guardianship to Great Aunt or Grandmother, the trial court had the authority to decide, not VCDSS. *See id.* (again empowering the *court* to choose between placing the juvenile in the custody of a relative or appointing a guardian); *see also* N.C. Gen. Stat. § 7B-903(a1) ("In placing a juvenile in out-of-home care under this section, *the court* shall" undertake the listed actions. (Emphasis added.)). Because the trial court, not VCDSS, had authority, and the trial court was required to take into account the ICPC home study, as discussed above, VCDSS incorrectly argues the ICPC study was immaterial because VCDSS had placement authority.

In addition, VCDSS ignores the trial court's three orders directing VCDSS to obtain a home study of Grandmother. Whatever VCDSS may have "intend[ed]" as to the placement of the children, the trial court had ordered the home study, and VCDSS had an obligation to comply with the trial court's orders.

Given these facts, I agree with Mother that the trial court failed to comply with

16

North Carolina General Statute § 7B-903(a1)'s command to comply with the ICPC. *See* N.C. Gen. Stat. § 7B-903(a1). Given the three court orders directing VCDSS to investigate Grandmother as a potential placement, the trial court was clearly considering her as a potential placement. Since the trial court was still considering placement with an out-of-state relative, it would have to comply with the ICPC. *See In re V.A.*, 221 N.C. App. at 640, 727 S.E.2d at 904 (requiring an ICPC home study before there can be placement with an out-of-state relative). But the trial court did not comply with the ICPC's requirement of a home study, *see id.*, and instead considered and rejected placement with Grandmother without having a home study. Further, the trial court did not provide sufficient reasoning for its decision to not wait for the home study under the unusual circumstances of this case. The trial court gave "[n]o audible response" when Mother's attorney asked about the home study at the end of the relevant hearing, and the trial court's findings in its written order were not sufficient as the home study could have provided pertinent information that could have affected those findings.

I would hold the trial court failed to comply with the ICPC and failed to comply with North Carolina General Statute § 7B-903(a1). Because the trial court failed to comply with a statutory mandate, I would vacate the trial court's order entirely and remand the case to the trial court for further proceedings and entry of a new order. For that reason, I would not reach the other issues raised on appeal. However, I concur with the Majority Opinion as to the remaining issues. Therefore, I respectfully

17

concur in part and dissent in part.